Guy Henry COLLINS, Appellant,

v.

The STATE of Texas, State.

No. 2–81–318–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 10, 1982.

Danny D. Burns, Jerry J. Loftin, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Joe C. Lockhart, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, SPURLOCK and HOLMAN, JJ.

## OPINION

SPURLOCK, Justice.

Appellant, Guy Henry Collins, was charged in a two count indictment with possession of a controlled substance, hydromorphone, and delivery of the same. Tex. Rev.Civ.Stat.Ann. art. 4476–15, § 1.02(8) and (23). An enhancement paragraph alleged a previous felony conviction. Collins was found guilty of possession in a trial before the court, which assessed punishment at life in prison. Collins argues, inter alia, that: (1) he was denied a trial by jury after Collins' attorneys withdrew a waiver of jury trial prior to the commencement of trial; (2) the State failed to assist Collins in locating a material witness pursuant to a discovery order; and (3) the trial court erred in proceeding to trial, after having ruled that there was entrapment as a matter of fact and law on the delivery of hydromorphone.

We reverse and remand.

Collins contends that the trial court erred in denying Collins a trial by jury after Collins' attorney withdrew a waiver of jury trial prior to the commencement of the trial.

We will discuss Collins' contention that he was denied a jury trial along with the trial court's various entrapment rulings, as they bear closely on one another.

We find it necessary to set out segments of the proceedings to clarify the record.

On March 23, 1981 Collins signed a waiver of jury trial. On that date the State refused to consent and approve this document. The record reflects that a jury was due to arrive in court at 1:30 p.m. on March 23. However, the jury panel was sent out of the courtroom at 1:30 p.m., so the court could hold a hearing on entrapment as a defense to the delivery charge. A hearing was held, and counsel for the defense questioned Sharon Diane Malone, who was the person that the indictment identified as the one to whom Collins delivered hydromorphone. The court also questioned this witness, to clarify her testimony and the issue of entrapment. Malone testified that she did not receive any drugs from Collins and that the police told her to say that she had received two tablets from Collins, although this was not true.

At this point in Malone's testimony, the court observed that the prosecutor "did not have a case". The court indicated his ruling on entrapment as follows:

MR. WORLEY: Yes, sir. She's been under oath and she told the Grand Jury that she obtained drugs from him.

THE COURT: Well, so what? She's in a District Court now fixing to testify before a jury and she can't change this testimony because I won't let her.

MR. WORLEY: Yes, sir. But we can still try the case—

THE COURT: And if she does tell the Jury that, I'm going to make them read back what she's already said in this record and there goes your case and *I told y'all two or three—maybe a month ago, that you didn't have a case.* I heard her tape.

MR. WORLEY: Judge, *we're still ready to pick a jury and try the case.*

THE COURT: On what?

MR. WORLEY: On Possession of Controlled Substance—

THE COURT: Well, *I've got something to do besides waste time. The jury is going to walk that man.* Because they're going to read back what is heard there. [Emphasis added.]

\* \* \* \* \* \*

CROSS–EXAMINATION

BY MR. WORLEY:

Q. Sharon, this is the first time you've told this story where I could hear it, isn't it?

THE COURT: Well, I can't understand why you'd want to prosecute somebody if she's telling this Court now that—

MR. WORLEY: Your Honor, because I don't believe her.

THE COURT: —it didn't happen. Well, it's *your duty to see that justice is done and justice in a case where she tells two different stories is to let him go because there would be a reasonable doubt.*

MR. WORLEY: No, sir, not—I disagree, Your Honor—

THE COURT: *Your motion is granted on entrapment.*

*Don't bring me any more cases like that.*

MR. WORLEY: Your Honor, we still have a case. [Emphasis added.]

[End of proceedings.]

At the end of these proceedings of March 23, 1981, it appeared that the court had ruled that there was entrapment; and that Collins had signed a document which would have constituted his waiver of jury trial had both the State and the court consented to and approved waiver, as evidenced by their signatures. However, they had not done so. V.A.C.C.P. art. 1.13 sets forth the requisites of a valid waiver.

Art. 1.13. Waiver of Trial by Jury

The defendant in a criminal prosecution for any offense classified as a felony less than capital shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State. The *consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the*

*State shall be in writing, signed by him, and filed in the papers of the cause before the defendant enters his plea.* Before a defendant who has no attorney can agree to waive the jury, the court must appoint an attorney to represent him. [Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, § 1, eff. Jan. 1, 1966.] [Emphasis added.]

Clearly, these requisites of a valid and effective waiver were not met as of March 23, 1981.

On March 24, 1981, prior to the commencement of the case, and before a jury was impanelled, the trial court clearly reiterated his ruling that there had been entrapment in the delivery of hydromorphone.

## PROCEEDINGS

[March 24, 1981.]

THE COURT: This is still Cause No. 23228. Is that what you want to try?

MR. WORLEY: Yes, Your Honor.

THE COURT: *Okay. I've held as a matter of fact that there was entrapment in the sale.* What do you want to do?

MR. WORLEY: We'll object to the holding based on the evidence for whatever purpose.

THE COURT: *You can object to whatever you want to. That's the holding. I held that yesterday.*

MR. WORLEY: Yes, Your Honor. [Emphasis added.]

At this point Collins' pending motions to suppress, to quash the indictment, for continuance, and to dismiss could properly have been heard. These motions were all based on the trial court's entrapment holding.

However, the court refused to hear the above motions; instead addressing the State's attempt to agree and consent to Collins' attempted waiver of a jury trial of the previous day. The record reflects that it was only at this point, on March 24, 1981, that the State signed the waiver document.

MR. WORLEY: Your Honor, we'd like to proceed—we'd like to—*I understand the Defense has applied to waive jury* and *we'd like to agree to that.* [Emphasis added.]

The record reflects confusion at this turn of events on the part of Collins' counsel. (On March 23, 1981, the trial court had refused to hear Collins' motion to assert entrapment as a defense until Collins admitted to the court that he was guilty of possession and delivery of hydromorphone.) The following occurred on the 24th:

THE COURT: Have you waived a jury?

MR. LOFTIN: Your Honor, I'm sorry?

THE COURT: Have you waived a jury?

MR. LOFTIN: Your Honor, we had—I had some motions—

THE COURT: One thing at a time. Have you waived jury?

MR. LOFTIN: Your Honor, originally we had, but I need to check with my co-counsel.

THE COURT: I don't care about your co-counsel. He hasn't done anything anyway. You've been doing it all. Now, are you going to waive a jury or not.

MR. LOFTIN: Judge, I don't know. I'm sorry, Judge, I just don't know. I talked to him last night.

THE COURT: Well, he knows that Court starts at 9:00 o'clock. He can just leave the house earlier.

MR. LOFTIN: I know it. I know it. I've got some motions.

THE COURT: *Here it is. Well, call over there and tell them we don't need a jury. They've signed a waiver.*

MR. LOFTIN: *Your Honor, I'd like to withdraw that right now.*

THE COURT: *I'm not going to let you withdraw it. You already signed it.* Okay, now what, Mr. Loftin. [Emphasis added.]

■ "The right to trial by jury shall remain inviolate." Tex.Const. art. I, § 15; and, V.A.C.C.P. art. 1.12. The trial court approved of this "waiver" of trial by jury in the face of Collins' timely wish to withdraw any such waiver, prior to the time before a jury panel was seated in the courtroom; which withdrawal could not have resulted

in unreasonable delay of trial, or impedance of justice, or prejudice to the State, or inconvenience to witnesses.[1] We hold this action constituted a denial of Collins' right to trial by jury.

The State argues that the trial court subsequently inquired again as to whether Collins wished to waive a jury, and that a jury would have been provided if only a definite response had been made.

[Pause in proceedings.]

THE COURT: *You all signed a waiver of jury. I could hold you to it, I guess.*

MR. AULTMAN: Your Honor, *can we have about five minutes to confer.*

THE COURT: *No,* it's nine twenty-five. We've been fooling with this case for two days and we've gotten nowhere so far. What do you want to do? If you'd get here earlier, you'd know. Do you want a jury or not?

MR. LOFTIN: We've got a problem getting some witnesses up here is our biggest problem. I tried to get a hold of that Valerie Marrazzi yesterday and evidently she's got different names and things like that.

THE COURT: Well, you have to show diligence. I'm talking about—you're trying to talk about something else and I'm talking about waiver of a jury. *Is that still what you want to do?*

MR. LOFTIN: *Judge, I don't know.* I'm trying to figure out our time frame.

MR. AULTMAN: *May we confer with our client.*

THE COURT: *You just did.*

MR. AULTMAN: *We've got to confer—*

THE COURT: *The jury is waived.* [Emphasis added.]

This exchange does nothing to alter our holding that Collins was denied his right to a trial by jury and we sustain Collins' ground of error number one.

■ In several grounds of error, Collins also complains that the trial court disposed of a pre-trial issue concerning entrapment

after hearing testimony relevant and material to this issue, and after ruling on the issue as a matter of law; and then changed this ruling after trial, with no notice to Collins prior to trial.

Immediately upon the trial court's refusal to permit a jury trial, on March 24, 1981, the trial court indicated that it might not adhere to its oft repeated entrapment ruling.

THE COURT: *We're going to hear this all at one time. And then I'll tell you what I think about your entrapment. If you're going to try it to the Court which we're fixing to do, put on everything including entrapment, and then I'll tell you what I think about your case.*

Bring out your witnesses. All of the witnesses who expect to testify in the Collins case, come forward, please. [Emphasis added.]

Prior to judgment, the court did in fact rescind its earlier ruling that there had been entrapment as to the sale of the hydromorphone. Every court has the right to rescind its rulings, prior to judgment, should the court decide that additional evidence changes the basis of the court's earlier ruling. The record here reflects that the trial court did so in its entrapment ruling. The initial granting of Collins' motion of March 23, 1981 did not constitute a dismissal of the cause, since the motion did not request such relief; and the trial court did not grant such an order on its own motion.

However, Collins had urged his motion for continuance. Paragraph II of the motion reflects that as of March 23, 1981, appellant and his counsel understood, due to the ambiguous nature of the ruling, that the trial court had ruled that there had been entrapment as a matter of law, and that this ruling operated to dismiss the cause. After returning to their homes and offices, counsel were reached by telephone and advised that the State intended to proceed on the "possession" case. Paragraph III reflects that counsel were unable to locate Collins and unable to properly prepare their motions and case for trial on this

1. See 46 A.L.R.2d 919 for discussion of withdrawal of waiver of right to jury trial.

short notice. Paragraph V reflects that counsel for Collins were as yet unable to locate a material witness. This motion was denied without a hearing.

"Denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice", *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), at 236, 62 S.Ct. at 289. "While no court has been able to give a full and complete definition of the term, 'due process', as used in both our state and federal constitutions, yet we know that it includes and means that an accused shall, in a criminal case, be accorded that fundamental fairness necessary to the due administration of justice." *Webb v. State,* 161 Tex.Cr.R. 442, 278 S.W.2d 158 (1955); (also citing *Lisenba v. California, supra*). "Each case stands upon its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial." *Sullivan v. United States,* 317 F.2d 101 (5th Cir.1963).

The circumstances surrounding the trial court's entrapment ruling created substantial confusion over the effect of that ruling. This confusion affected not only defense counsel, but is also evident on the part of the Assistant District Attorney:

MR. WORLEY: Has the Court *actually dismissed* the first count of the Indictment?

THE COURT: I haven't dismissed any of it. [Emphasis added.]

Collins' counsel relied on the original entrapment ruling of March 23, 1981, and its reiterations on March 24, 1981, in the presentation and defense of his case; as the trial court did not make it clear to counsel that it was entertaining the prospect of rescinding this entrapment ruling. Rather, the trial court had reiterated, in strong language, that it had ruled that there was entrapment in this case; and that further argument of the point was unwelcome, out of order, and futile.

We conclude that it was fundamentally unfair for the trial court to have withdrawn its ruling on entrapment, under the circumstances recited above.

Collins also complains, in several grounds of error, that the trial court erred in denying Collins' motion for a new trial on the grounds that the prosecution suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962).

Specifically, Collins complains that the State knowingly failed to comply with the discovery order in that after being ordered by the court to disclose the names of all witnesses present at the scene, the Assistant District Attorney failed to provide the defendant with the correct name of the witness Valerie Marrazzi Faulkner and her location, both of which were well known to the Assistant District Attorney. In fact, the record shows that Mr. Worley, the prosecutor herein, had visited with Ms. Faulkner in prison shortly before trial, and had heard her account of the arrest of Collins.

 The State is under an obligation to disclose any exculpatory or mitigating evidence which comes to their attention. *"Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, supra,* at 87, 83 S.Ct. at 1196. [Emphasis added.] "Even testimony which he (the prosecutor) honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury . . ." should be disclosed pursuant to a *"Brady"* type discovery order [*Means v. State,* 429 S.W.2d 490, 495 (Tex. Cr.App.1968)]. The State argues that we should hold that Collins has waived any error on the issue because Collins' counsel did not attempt service on Ms. Faulkner until the day prior to the trial; and that this fact constitutes a want of diligence. *Watkins v. State,* 438 S.W.2d 819, 821 (Tex. Cr.App.1969) holds that: "To justify the grant of a new trial (on the basis of newly discovered evidence) it *generally* must be shown that the evidence was unknown to the movent (sic) *before* the trial, that his *failure to discover it* was *not due to his*

*want of diligence,* that its *materiality* was such *as would probably bring about a different result on another trial,* and, generally, that it was competent, and not merely cumulative, corroborative, collateral, or impeaching." [Emphasis added.] *Watkins* is applicable to motions for new trial based upon newly discovered evidence; but its holding does not relieve a prosecutor of his duty to comply with a valid discovery order as expressed in *Brady* and *Means*. *Means* further states that *"reversible error is also committed where the prosecutor negligently or inadvertantly fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense,* even though not offered as testimony at the trial and *even though the accused's counsel is not diligent in his preparation for trial."* [Emphasis added.] (*Means v. State, supra,* at 494; see also cases cited therein.) *Means* further holds that "the development of the case law on this subject teaches that the good or bad faith of the prosecutor or the lack of diligence by the defense counsel or the lack of request for such information (particularly where defense counsel has no reason to suspect the existence of such evidence) are not the controlling factors they may have once been . . . In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel." (at 494).

The State urges that: Collins became aware of the correct name of Ms. Faulkner through testimony at trial; and that Ms. Faulkner's testimony was cumulative and corroborative in part of the State's testimony; and, that the fact that she did not see any pills in the possession of Collins did not refute testimony of police officers that there were two tablets on the seat where Collins had been sitting, or that the police officer took an envelope (later found to contain a controlled substance) from under the driver's seat. This argument goes to the materiality of the evidence suppressed; and to the *Watkins* requirement that the evidence be unknown to the movant before trial. The record shows that the defense became aware of Ms. Faulkner's correct name during trial, not prior to trial. The language of *Watkins* states that "generally" the movant's failure to discover new evidence must not be due to movant's want of diligence.

In the instant case, we will not allow the State to escape its duty to disclose evidence favorable to an accused (who has requested it and obtained a discovery order) through the State's assertion that the accused failed to exercise due diligence in obtaining service on the witness. Diligence is required to avoid undue delay in the judicial process. In this case, a protracted search for the witness was unnecessary. Ms. Faulkner was in prison in Gatesville, and Mr. Worley, the prosecutor, knew exactly where she could be found, as he had visited with Ms. Faulkner only one week prior to trial. No unreasonable or undue delay would have resulted had the court granted a continuance and awaited process on Ms. Faulkner. The test for determining the materiality of the evidence suppressed is as follows: "In determining materiality of information not disclosed to defense, the omission must be evaluated in the context of entire record, and constitutional error is committed only if omitted evidence creates a reasonable doubt which did not otherwise exist." *Stone v. State,* 583 S.W.2d 410 (Tex.Cr.App.1979).

Looking to the record, we see that Ms. Faulkner testified at the hearing on Collins' amended motion for new trial. She stated that she had entered Collins' car (between the time he allegedly delivered a controlled substance to Sharon Diane Malone and the time Collins and Faulkner were surrounded by police and arrested) in order to visit with Collins and "say Hi!". Almost immediately upon joining Collins in his car, Faulkner asked Collins if he had any drugs. Faulkner said she asked this because she had heard that Collins had been arrested (prior to the instant case) and that Collins "wasn't doing anything" as a result. This question of Collins "was just a conversation piece". Collins replied that, indeed, he did not have any drugs. Ms. Faulkner also testified that she had not seen a manila envelope (later

found to contain a controlled substance) in Collins' possession; and that the first time she saw this envelope was when a police officer reached his hand under the driver's seat, and then came out with a manila envelope. Ms. Faulkner stated that when Mr. Worley, the prosecutor, visited her at Gatesville one week prior to trial, Mr. Worley asked her about these things, and that she told him substantially the same things that she testified to at the hearing on Collins' amended motion for new trial. Ms. Faulkner further testified that: the first time she saw the envelope it was in the hand of the police officer; that she had been watching Collins when the police surrounded the car and arrested him; that Collins put up his hands to show he had no weapons, and then placed his hands back behind the seat; and that she did not see Collins take anything out of his pocket; all of which testimony contradicts testimony offered at trial by the police officers involved. Ms. Faulkner did not say that the envelope in question was planted by police. At this hearing, Mr. Worley, the prosecutor, testified that he knew that Ms. Faulkner used the name Faulkner rather than Marrazzi, and that she was incarcerated under that name. The record reflects that Mr. Worley sat mute in the courtroom while Collins' counsel argued for a continuance, and related to the court his difficulties in locating Ms. Valerie Marrazzi (Faulkner), whom counsel considered a material defense witness. A fair reading of the record reflects that Ms. Faulkner was a material witness, and that her correct name was unknown to Collins' counsel prior to trial.

■ It is immaterial whether Mr. Worley's failure to disclose the name and location of a material witness for the defense was deliberate or negligent, or in good or bad faith (see *Means* above). Nor does the asserted lack of due diligence by defense counsel (in obtaining the witness) control in the circumstances of this case. In focusing on the essential fairness of the procedure herein, and upon the duty of the State, under *Brady v. Maryland, supra, Means v. State, supra* and *Stone v. State, supra*, to disclose material evidence favorable to an accused, regardless of the State's opinion of its truthfulness, we hold: that such evidence was material under the *Stone* test; that the evidence was suppressed; and that this constituted a violation of due process as in *Brady v. Maryland, supra.*

We reverse and remand.