No. 48,045

STATE OF KANSAS, *Appellee*, v. LAWRENCE L. DAIGLE, *Appellant.*

(556 P. 2d 400)

Opinion filed November 6, 1976.

*Edgar W. Dwire,* of Malone, Dwire, Glover and Hobbs, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Lawrence L. Daigle, was convicted after a trial to the court of possession of heroin in violation of K. S. A. 1973 Supp. 65-4127a. The facts as disclosed at the trial were essentially as follows: During the morning hours of July 31, 1973, the defendant Daigle drove his motor vehicle to the home of a friend in Wichita. While there he entered the garage for the purpose of picking up certain personal property. The defendant was observed on the property by Beverly Beadles, a neighbor, who with good intentions called the police to report a suspicious person in the block. Beadles gave the police a description of defendant's automobile. The defendant left the premises and drove to the intersection of Washington and Pawnee Streets where he was stopped by Patrolman Ryder who was on the lookout for the described automobile. At Ryder's direction defendant drove off the street into the driveway of a furniture store adjacent to the intersection. Ryder suggested to defendant that he return to the home of his friend in order to clear up the prowler report. Defendant did so, and after a short discussion there he was released. Not long thereafter Patrolman Ryder was approached by Raymond Calvin at the intersection of Washington and Pawnee. Calvin

informed Ryder that he had observed the defendant's car as it pulled into the driveway and saw a brown-paper bag flying from the direction of defendant's car and landing on the grass near the area where Ryder had previously stopped the defendant's vehicle. Upon investigation Ryder discovered the paper sack on the ground and upon opening it found inside a syringe, five individually wrapped Trojan brand prophylactics, a torn piece of prophylactic wrapper, and a Trojan brand prophylactic box. Ryder opened the box and found one prophylactic containing a cinnamon-colored substance which was determined to be heroin. Ryder then observed the defendant in the vicinity of this same intersection. He proceeded to place the defendant under arrest for possession of heroin. A search of defendant's person by Patrolman Ryder yielded $670 in cash, two silver measuring spoons, a billfold, and several individually wrapped Trojan brand prophylactics. Later that same day defendant consented to a search of his car and his house. A search of defendant's house produced still more Trojan brand prophylactics, printed directions, another torn piece of prophylactic wrapper, and two syringes.

On December 18, 1973, an information was filed in the Sedgwick county district court charging defendant with possession of heroin. Thereafter the case eventually was tried four times. The first trial was before a jury in February of 1974 and resulted in a mistrial when the jury could not agree on a verdict. The second trial was before a jury in May 1974, and again the jury was unable to agree. On August 6, 1974, the defendant appeared in district court with his counsel at a jury trial docket call and voluntarily waived his right to a jury trial. The district administrative judge accepted the waiver and placed the case on the nonjury trial docket for September 3, 1974. The defendant failed to appear for trial on the date set. His bond was forfeited and a warrant for his arrest was issued.

Eight months later on May 1, 1975, the defendant was arrested. The district administrative judge by mistake placed the defendant's case on the May 12 jury trial docket. When the case was called on that date, the defendant requested a continuance until June 2. At that time the prosecutor reminded the court of the defendant's prior waiver of jury trial. The court then ordered the case to be set on the nonjury trial docket and continued until May 27. On May 12 the defendant did not object to removing the case from the

jury trial docket nor did he request that he be allowed to withdraw his prior jury waiver. Two days later on May 14, 1975, the defendant filed a motion to withdraw his waiver of trial by jury and requested a jury trial. The motion was not heard until May 23 because of compliance with supreme court notice rules and Sedgwick district court procedures. At the hearing on his motion the defendant offered no specific reasons for seeking to withdraw his waiver. The state objected thereto on the grounds that substantial delay would result if the motion was granted. The prosecutor pointed out that some witnesses would not be available in June. The district administrative judge stated that the case had been set on the jury docket by mistake. The judge concluded that the trial would be substantially delayed if not commenced on the day when it was scheduled for nonjury trial and denied the motion.

The case was called on the nonjury docket on May 27, 1975, and trial commenced that day. On May 28 a mistrial was declared before the conclusion of the evidence, and the case was set for a nonjury trial on the following morning. At the conclusion of the fourth trial the district court found the defendant guilty of possession of heroin and this appeal followed.

The only real issue to be determined at any of the trials was whether the defendant had possession of the brown-paper sack and the heroin contained therein prior to the time it was discovered by the police officer on the ground near the place where defendant was stopped by Patrolman Ryder. At the two jury trials the evidence was disputed. Mr. Calvin testified on behalf of the state that he observed officer Ryder directing defendant to pull into the driveway near the intersection and that as the defendant did so a brown-paper sack flew from the direction of the defendant's car and landed in the grass near the street. In his defense the defendant offered the testimony of Mr. and Mrs. Jack Hanson, who at that time resided in Lawton, Oklahoma. They testified in substance that during the midmorning hours of July 31, 1973, at the intersection of Washington Street and Pawnee Street in Wichita, they observed two young men pitch what appeared to be a brown-paper sack in the grassy area near the intersection. The testimony of the Hansons raised a *bona fide* issue for the jury as to whether the defendant Daigle had ever had possession of the sack.

At the fourth trial, in which the defendant was convicted, the state at the last minute came up with some evidence which was ex-

tremely damaging to the defense. During the fourth trial the assistant district attorney, James E. Rumsey, noticed a similarity between the torn edge of the piece of prophylactic wrapper found in the sack containing the heroin and the edge of the piece of prophylactic wrapper found at the defendant's house when it was searched on the same day. At Rumsey's request the two pieces of wrapper were examined during the lunch hour under a comparison microscope by Linda Voss, a police forensic chemist. Following the noon recess Mrs. Voss testified that she had compared the two pieces of prophylactic wrapper and that the torn edges matched perfectly, leading to the inescapable conclusion that they had previously been a part of the same piece of paper. Mrs. Voss also identified two photographs which demonstrated the matching of the two pieces of paper, and they were admitted into evidence by the trial court. This testimony was never rebutted by the defendant and undoubtedly resulted in the defendant's conviction of possession of heroin. It is difficult to see how the court could have reached any other reasonable conclusion.

On this appeal the defendant raises four points of claimed trial error. Points No. 1 and No. 2 concern the refusal of the district court to grant the defendant a jury trial. As his first point the defendant maintains that the trial court erred in its failure to grant the defendant a jury trial after the case had been placed on the trial docket of May 12, 1975. It is the defendant's position that, although the defendant had previously waived trial by jury prior to his jumping bond in September of 1974, once the trial court put his case back on the jury trial docket he was entitled to a jury trial as a matter of right. The record discloses that the defendant waived jury trial on August 6, 1974, approximately nine months prior to the time he was apprehended and the case was set on the jury trial docket. Furthermore on the date set the defendant did not announce ready for trial but asked for another continuance and did not request leave to withdraw his waiver of jury trial. Nor did he object to the setting of the case on the nonjury trial docket. As the district administrative judge observed on May 23, 1974, he had inadvertently set the defendant's case on the jury trial docket after defendant's apprehension. In our judgment it was not error under the circumstances for the trial judge to remove the case from the jury trial docket and return it to its proper place on the nonjury trial docket.

As his second point on appeal the defendant contends that the

trial court erred in its refusal to allow the defendant to withdraw his waiver of a jury trial. The record is clear that the defendant in August 1974, voluntarily and understandingly waived trial by jury. Thereafter his waiver could not be withdrawn except in the discretion of the trial court. (*State v. Blanton,* 203 Kan. 81, 453 P. 2d 30.) Among the factors to be considered by a trial court confronted by such a motion are the timeliness of the motion to withdraw the waiver and whether a delay of trial or serious inconvenience of witnesses would result from granting such motion. At the hearing on the motion for withdrawal of jury waiver in this case evidence was presented by the state which reasonably showed that substantial inconvenience would occur if the motion was granted. Vacations were apparently coming up and some witnesses would not be available at a later date in the near future. It was obvious that if the motion was granted the trial would be delayed for at least a month. Furthermore, on the hearing of his motion the defendant gave no specific reason for wanting to withdraw his waiver. He does not claim that the trial judge was prejudiced against him nor has any prejudice been shown. Considering the record in its entirety we have concluded that the defendant has failed to show that the trial court abused its discretion by refusing to allow the defendant to withdraw his waiver of jury trial.

The defendant's third point is that the trial court erred in its refusal to grant the defendant a continuance so that two witnesses for the defense, Mr. and Mrs. Jack Hanson, could be subpoenaed. These are the two witnesses noted above who testified on behalf of the defendant at two prior trials. Transcripts of their testimony at previous trials were available and were admitted into evidence in this case. The defendant's position is that the live testimony of these witnesses was vital and that the defendant was prejudiced by the refusal of the trial court to grant a continuance to obtain their testimony in person. It is the state's position that the trial court did not abuse its discretion is refusing to grant a continuance since the witnesses were residing in the state of Alabama which has not adopted the uniform act to secure attendance of witnesses from without the state. (K. S. A. 22-4201, *et seq.*) The state contended that since Alabama was not a party to the uniform act the presence of the witnesses could not be compelled and, if the trial was continued, the defendant could not guarantee the presence of these witnesses. Continuances may, of course, be granted either party for good cause shown. (K. S. A. 22-3401.) The granting of a continu-

ance is a matter within the sound discretion of the trial court. In seeking a continuance due to the absence of a witness, the party must show that due diligence has been exercised to procure the witness's testimony. A continuance will not be granted merely upon an assertion that the party relied upon the promises of witnesses that they would be present and testify. (*State v. Williamson*, 210 Kan. 501, 502 P. 2d 777.) In this case the defendant was not even relying upon promises from his witnesses. He was merely attempting to subpoena witnesses from out-of-state whose presence he could not compel. Counsel for the defendant was not able to advise the trial court that the Hansons would leave Alabama and appear at the trial if the case was continued. The defendant's motion was nothing more than an attempt to gain time to see if he could obtain from the Hansons a promise to appear in court at some later date. Here the trial court, prior to overruling the motion for continuance, was advised that a transcript of the witnesses' testimony was available and could be introduced into evidence by the defendant. We have concluded that under all the circumstances the trial court properly exercised its discretion and that its refusal to grant a continuance was not an abuse of discretion.

The defendant's fourth and final point is that the trial court erred in allowing the state to introduce new prejudicial evidence after the commencement of the trial in violation of a discovery order, and, once admitting the evidence, the trial court erred in its failure to grant the defendant a sufficient continuance to allow him to obtain independent expert analysis concerning the new evidence. The evidence in question was the "fracture test" conducted by the forensic chemist, Linda Voss, in which she compared the fragment of the prophylactic wrapper found in the brown-paper sack with the piece found in the defendant's house and concluded that the torn edges of the pieces matched perfectly. It is clear that the state had not conducted this particular test until the lunch recess of the first day of the fourth trial. The trial court held that the state was not precluded from continuing its investigation even after trial had commenced and overruled the objection. It is undisputed that following completion of the test, counsel for the defendant was promptly advised of the results thereof. Furthermore, defendant's counsel was permitted to interview the forensic chemist prior to her testifying and was given the opportunity to examine the two photographs which documented her visual observations through the comparison microscope. The trial court also ordered that the fragments

be made available to any witness designated by the defendant and recessed the case until the following day so that the defendant might obtain an expert to examine the fragments. We have concluded that the state did not violate the previous discovery order of the trial court, since the trial court required the results of the test to be made available to defendant's counsel promptly after the test had been completed.

The defendant insisted upon the right to be granted a continuance to search for out-of-state "fracture experts" who might testify on defendant's behalf. The trial court observed that Mrs. Voss's testimony consisted only of a comparison of two pieces of paper observed under a microscope and that the defendant did not need the assistance of an out-of-state fracture expert. In our judgment the trial court did not abuse its discretion in permitting the state to introduce the testimony of Linda Voss into evidence and in its refusal to grant an extended continuance in the case. The defendant has not shown that he was prejudiced by the trial court's order. Following the completion of the trial and the finding of guilty, the defendant had an opportunity to have tests made on the fragments and to present them to the trial court at a hearing on a motion for a new trial. Counsel for defendant did not show to the trial court, nor has he shown to this court, that he has evidence available to dispute the conclusion of the state's expert witness that the fragments of prophylactic wrapper paper were at one time a part of the same piece of paper. We are certain that if such expert testimony was available to defendant to dispute the testimony of the state's expert witness, such testimony would have been presented to the trial court on a motion for a new trial.

For the reasons set forth above the judgment of the district court is affirmed.