OPINION OF THE COURT
Dominic R Massaro, J.
Iran Miller presents a seldom asked question: whether, after having effectively waived the right to trial by jury and consented to trial by the court, an accused may withdraw such waiver and reassert his constitutional guarantee. In granting vacatur of the waiver, the court finds exercise of the right to outweigh any burden placed on the State as a result thereof.
In July 1989, Mr. Miller was arrested and indicted for *555 felony level drug offenses (criminal sale of a controlled substance in the third degree [Penal Law § 220.39] and criminal possession of a controlled substance in the third degree [Penal Law § 220.16]). At the point of trial, February 5, 1990, he waived his right to a jury; in the alternative, Mr. Miller indicated the desire to proceed before the court. The appropriate fundamentals of said waiver were observed, and defendant, in conformance with the Criminal Procedure Law, executed it in writing in furtherance of his election. His trial was then scheduled to commence on the following day. On February 6, defense counsel indicated Mr. Miller’s reluctance to proceed, and that he now wished to reassert his constitutional right to trial by jury. The People objected, resting on the effectiveness of the waiver.
The matter was heard on February 7 and 13, 1990. Defendant advanced two reasons for his application: first, changed circumstances; and secondly, that the waiver was not knowingly, intelligently and voluntarily made.
As for the latter reason, an examination of the record reveals ample clarity to the contrary. The waiver was valid and not in conflict with the law; the argument advanced with respect to otherwise being the case is devoid of merit (see, People v Mettler, 147 AD2d 849 [3d Dept 1989]; People v Logue, 115 AD2d 285 [4th Dept 1985], lv denied 67 NY2d 886 [1986]; People v Cannady, 127 Misc 2d 783 [1985], affd 138 AD2d 616 [2d Dept 1988], lv denied 71 NY2d 1024 [1988]). As to the first argument, that of changed circumstances, suggesting that Mr. Miller was under the impression that if he proceeded before the Bench the trial would have commenced immediately, this is worthy of consideration. His expectation for the afternoon of February 5, 1990, was not entirely unfounded.[1]
FUNDAMENTAL IMPERATIVE
The right to trial by jury in a criminal proceeding has long been established as the normal and preferable mode of disposing of issues of fact. A part of the credo of the American legal system, it is a fundamental imperative, sacrosanct in nature *556 and guaranteed by both the Federal and State Constitutions (see, US Const, art III, § 2; US Const Sixth Amend; NY Const, art I, § 2). Neither document, however, precludes an express waiver thereof, nor does the court, in the absence of any mandate to the contrary, entertain a doubt that defendant could rightfully make such a waiver. (Cf., People v Duchin, 16 AD2d 483, 485 [1962], affd 12 NY2d 351 [1963] [where some "compelling ground arising out of the attainment of the ends of justice” requires that the request for waiver be denied: e.g., generally, impermissible procedural strategem]; see also, People v Firestone, 111 AD2d 696 [1985]; People v Diaz, 10 AD2d 80 [1st Dept 1960], affd 8 NY2d 1061 [1960].)
There is no little amount of uniformity in the decisions of other State courts upholding the constitutionality of positive statutory enactments providing for jury waiver (see also, Fed Rules Crim Pro, rule 23 [a];[2] Singer v United States, 380 US 24). And while a number of cases hold that in the absence of a textual provision conferring said right, one who is charged with the commission of a felony cannot so waive, there is a noticeable trend in the more recent cases to otherwise recognize it.
It is only relatively recently, however, that this essential element of procedural due process could be waived by a New York defendant. This was statutorily provided for following a constitutional amendment a half century ago.[3]
PRESERVED AT COMMON LAW
New York first provided for the right of trial by jury in its *557 fundamental act of legislation (see, NY Const art XLI [1777]). The framers of the document were intent upon preserving the right at the common law from English jurisprudence antedating the State Constitution.[4]
Throughout English colonial and early American legal history, the right to trial by jury was regarded as a cherished privilege bestowed upon each citizen for the purpose of safeguarding him against oppressive power and arbitrary judgment. "[N]o tyrant could afford to leave a subject’s freedom in the hands of twelve of his countrymen” (Devlin, Trial by Jury, at 164 [1956]).
With its basis referenced in Magna Carta (1215), trial by jury finds fuller expression in the English Bill of Rights of 1689, the eloquent faith Blackstone placed in it as a check by the people on royal prerogative (see generally, 4 Blackstone, Commentaries on Laws of England [1769]), and the repeated requests for it during the colonial period: the Stamp Act Congress (1765),[5] the First Continental Congress (1774),[6] the Declaration of Independence (1776),[7] and, ultimately, the United States Constitution (1787).
Of critical importance in the debate to ratify the Constitution was the prosecution of individual rights, and regularly *558 mentioned was the right of trial by jury. "The friends and adversaries [of the Constitution], if they agree on nothing else, concur at least in the value they set upon the trial by jury, or if there is any difference between them it consists in this: The former regard it as a valuable safeguard to liberty; the latter represent it as the very palladium of free government” (Federalist No. 83 [1788]).
In every substantial sense, then, this provision in respect to trial by jury in criminal cases is for the protection of the interests of the accused.
The language of the Federal Constitution, which followed by a decade our own, fortifies this guarantee in the most solemn of terms. That this was the purpose of the third article[8] is reinforced by the safeguard expressed in pari materia by the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed” (see, Callan v Wilson, 127 US 540 [1888]).
TWO VIEWS
Although New York has addressed the issue but once, holding that refusal to grant an application to withdraw a waiver of a jury trial is not an abuse of discretion (see, People v McQueen, 52 NY2d 1025 [1981]), our Court of Appeals did not see fit on that occasion to adopt a rule. Other jurisdictions have given it more consideration.
The minority view allows a criminal defendant to withdraw a jury waiver prior to commencement of trial as a matter of right, the denial of which is justified only upon a showing of substantial prejudice to the prosecution or the obstruction of justice (see, Brumbalow v State, 128 Ga App 581, 197 SE2d 380 [1973]; State v Grimsley, 3 Ohio App 3d 265, 444 NE2d 1071 [1982]; Commonwealth v Wright, 362 Pa Super 464, 524 A2d 970 [1987]; Collins v State, 642 SW2d 80 [Tex App 1982]).
The majority view, on the other hand, holds that the application is addressed to the trial court’s sound discretion, the exercise of which involves weighing the facts and circumstances of each particular case (see, United States v Clapps, 732 F2d 1148 [3d Cir 1984]; United States v Holmen, 586 F2d *559 322 [4th Cir 1978]; United States v Alpern, 564 F2d 755 [7th Cir 1977]; United States v Wright, 491 F2d 942 [6th Cir 1974]; United States v Holt, 333 F2d 455 [2d Cir 1964], cert denied 380 US 942 [1965]; Hall v United States, 330 F2d 558 [5th Cir 1964], cert denied 380 US 942 [1965]; Sparks v United States, 358 A2d 307 [DC App 1976]; Scales v State, 244 Ark 333, 424 SW2d 876 [1968]; People v Kipnis, 5 Cal App 3d 980, 85 Cal Rptr 547 [1970]; Garcia v People, 200 Colo 413, 615 P2d 698 [1980]; State v Biller, 33 Conn Sup 735, 369 A2d 1123 [1976]; Young v State, 407 A2d 517 [Del 1979]; Cochran v State, 383 So 2d 968 [Fla 1980]; Leggett v State, 184 Ga App 398, 361 SE2d 546 [1987]; Jones v State, 518 NE2d 479 [Ind 1988]; State v Daigle, 220 Kan 639, 556 P2d 400 [1976]; State v Toomer, 395 So 2d 1320 [La 1981]; State v Bleyl, 435 A2d 1349 [Me 1981]; Commonwealth v Collins, 11 Mass App 126, 414 NE2d 1088 [1981]; People v Hamm, 100 Mich App 429, 298 NW2d 896 [1980]; State v Kilburn, 304 Minn 217, 231 NW2d 61 [1975]; Newton v State, 211 Miss 644, 52 So 2d 488 [1951]; State v Lowe, 674 SW2d 262 [Mo 1984]; State v Kaba, 217 Neb 81, 349 NW2d 627 [1984]; Vandeventer v State, 65 Okla Crim 239, 79 P2d 1032 [1938]; State v Villareall, 57 Ore App 292, 644 P2d 614 [1982]; Commonwealth v Sorrell, 500 Pa 355, 456 A2d 1326 [1982]; Wilson v State, 698 SW2d 145 [Tex Crim App 1985]; Thomas v Commonwealth, 218 Va 553, 238 SE2d 834 [1977]; State v Turner, 16 Wash App 292, 555 P2d 1382 [1976]).
TIMELINESS
Applying the majority rule, the propriety of a Trial Judge’s exercise of discretion has focused on a number of factors which bear on the question of timeliness (i.e., motion to vacate waiver having been made prior to the commencement of trial when its granting would not have unduly delayed the trial or otherwise impeded the course of justice; see, People v Melton, 125 Cal App 2d Supp 901, 271 P2d 962 [1954]; State v Rankin, 102 Conn 46, 127 A 916 [1925]; Wilson v State, 60 Ga App 641, 4 SE2d 688 [1939]; People v Catalano, 29 Ill 2d 197, 193 NE2d 797 [1963]; State v Touchet, 33 La Ann 1154 [1881]; Staten v State, 13 Md App 425, 283 A2d 644 [1971]). The authorities are overwhelmingly uniform to the effect that a motion for withdrawal of the waiver made after the commencement of the trial is not timely and should be denied.
Indeed, substantial or unreasonable "delay” is often cited as a key factor militating against the granting of such applica *560 tians (see, McCranie v United States, 333 F2d 307 [5th Cir 1964]; People v Chambers, 7 Cal 3d 666, 498 P2d 1024 [1972]; Sharpe v State, 174 Ind App 652, 369 NE2d 683 [1977]). The related factors of jury panel availability (see, Scates v State, supra; State v Rankin, supra; State v Lawrence, 216 Kan 27, 530 P2d 1232 [1975]), inconvenience to State witnesses (see, People v Closson, 13 Ill App 3d 878, 301 NE2d 347 [1973]; Pearson v State, 213 So 2d 616 [Fla App 1968], writ discharged 223 So 2d 736 [1969], cert denied 397 US 994 [1970]; Walter v State, 4 Md App 373, 243 A2d 626 [1968]; State v Kaba, supra; State v Villareall, supra; Young v State, 407 A2d 517 [Del 1979], supra, cert denied 446 US 940 [1980], reh denied 445 US 973 [1980]), prosecutorial objection (United States v Houghton, 554 F2d 1219 [1st Cir 1977], cert denied 434 US 851 [1977]; Vines v Muncy, 553 F2d 342 [4th Cir 1977], cert denied 434 US 851 [1977]; State v Durham, 111 Ariz 19, 523 P2d 47 [1974]; State ex rel. Wadsworth v Mead, 225 Ind 123, 73 NE2d 53 [1947]; State v Kaufman, 51 Iowa 578, 2 NW 275 [1879]; State v Daigle, supra), and disruption of court administration (see, Cochran v State, supra; People v Closson, supra) are likewise invoked.
BAD FAITH
Another set of factors surround whether the application is made in good faith. In refusing to permit a defendant to withdraw a jury waiver several situations have been considered suspect: where there is lengthy delay and intervening appearances before advancing the request (see, Scates v State, supra; Rice v State, 211 So 2d 39 [Fla App 1968]; Mathias v State, 39 Md App 291, affd 284 Md 22, 384 A2d 482, affd 394 A2d 292 [1978], cert denied 441 US 906 [1979]); where the defendant’s brother wished for the defendant to have a jury trial (see, People v Chambers, supra); where the defendant’s attorney’s law partner exercised "poor judgment” in advising waiver (see, Wallace v State, 319 So 2d 117 [Fla App 1975]); where the court would not "cooperate” by dismissal of the case at complainant’s suggestion (see, Scates v State, supra), or discuss sentencing possibilities with defense counsel (see, People v Catalano, supra) or allow the defendant the benefit of erroneously having relied on a supposed defect in the charges against him (see, People v Spencer, 160 Ill App 3d 509, 513 NE2d 514 [1987]). Bad faith has also been discerned where there have been voluminous pretrial motions for continuances *561 (see, State v Kavanaugh, 203 La 1, 13 So 2d 366 [1943]; State v Jones, 270 Md 388, 312 A2d 281 [1973]).
Some courts have considered the failure to state a specific reason for the requested withdrawal as being fatal (see, State v Rankin, supra; State v Daigle, supra; State v Lawrence, supra; Cole v State, 12 Md App 379, 277 A2d 248 [1971]; Commonwealth v Starks, 298 Pa Super 213, 444 A2d 736 [1982]), while others have taken into account the fact that the reason proffered lacked validity (see, People v Chambers, supra; Jones v State, supra; Mathias v State, supra). The reason, or lack thereof, has been considered significant primarily in those cases where the facts are strongly suggestive of a motivation to avoid trial (see, State v Lawrence, supra; Sutton v State, 163 Neb 524, 80 NW2d 475 [1957]).
The McQueen court likewise found the initial waiver to be valid. However, after noting that the trial was indeed to have commenced on the prior day, the court characterized the application to regain the right to a jury trial as "a matter of whim”. An ensuing invitation to the defense to articulate a reason brought forth a declination.[9] This is not the case at bar.
The Court of Appeals, in so holding as a matter of law that the McQueen court did not abuse its discretion, left future determination of pretrial motions to withdraw a waiver of trial by jury to the sound discretion of the State’s trial courts. Nor is there any subsequent statutory enactment in New York dealing with when and under what circumstances a defendant can rescind said waiver.
CRITERIA AND ANALYSIS
The historic background of constitutional provisions establishing the jury mode of trial would appear to secure to the citizen who, upon reflection and in due course, seeks in good faith and without prejudice to retrieve it after waiver. And where there is no objective basis to justify denial of such a petition, the discretionary withholding of the right can only equate with its abridgement.
An objective evaluation of the surrounding facts and cir *562 cumstances suggests the following four criteria for individual and collective inquiry and determination: (1) timeliness of the application; (2) evidence of bad faith; (3) effect of the application on the course of justice (e.g., unreasonable delay of the trial or gross inconvenience to the prosecution’s witnesses or major disruption of the business of court administration); and (4) nature and/or extent of prosecutorial objection. The court now turns its attention to each criterion:
1. The instant application is timely. It is made prior to the commencement of trial; indeed, defendant advances it on the day following his waiver of a jury, at the very next opportunity he has to address the court.
2. The record is devoid of a showing that defendant is acting in bad faith. Rather, he interposes a valid reason: his recent transfer to the House of Detention for Men at Rikers Island, his witnessing of nightly violence thereat, the increasing number of threats to his personal safety and well-being, and, central in light thereof, his unfulfilled expectation to complete the trial at the earliest opportunity that his status be determined.
3. Granting of the application does not impede the course of justice. Delay of the trial is de minimis at best; a jury can be impanelled immediately. Regarding witnesses, it was the People who initially excused them for convenience due to the court’s calendar congestion; thereafter, the court excused the witnesses pending the outcome of the instant motion. In any event, each witness is a public servant, a police officer readily available "on call.” Finally, no disruption to administration of court business will flow from the granting of the application. While a desire for expediency is shared by all trial courts, and the practical problem of advancing calendars and disposing of assigned cases is real and pressing, desire nonetheless must bow to duty. Here, the duty is that of preventing an unjustified intrusion on the democratic process and an unwarranted infringement upon an enumerated right that deserves jealous preservation.
4. While the People did in fact interpose an objection to defendant’s application, it was procedural in nature (i.e., vis-ávis the effectiveness and validity of Mr. Miller’s waiver); no evidence respecting the enumerated criteria appears in the record. This factor is thus rendered neutral.
CONCLUSION
Following analysis, the court finds the motion timely made, *563 in good faith, and that granting it entails no unreasonable delay, inconvenience or disruption.
On balance, and with regard for the express privilege sought to be retrieved here, fundamental fairness and the due process requirement of the Fourteenth Amendment deem it altogether appropriate to grant the motion.
[Portions of opinion omitted for purposes of publication.]

. Just prior to Mr. Miller’s waiver, it had been announced that the People were ready to proceed and that a police witness was then present in the prosecutor’s office. As it turned out, the court was otherwise engaged, the trial eventually being set over to commence on the following afternoon, February 6. Calendar congestion the following day did not see the matter called until 4:30 p.m., at which time it was apparent that a further adjournment would become necessary.

. Federal Rules of Criminal Procedure, rule 23 (a) provides somewhat of a lesser opportunity to a defendant to take advantage of waiver of trial by jury because "the consent of the government” is required; nor does the rule require that the prosecution articulate its reason for demanding a jury trial at the time it refuses to consent to a defendant’s proffered waiver (see, Serfass v United States, 420 US 377 [1975]; Singer v United States, 380 US 24 [1965]; United States v Joshi, 896 F2d 1303 [11th Cir 1990]; United States v Josefik, 753 F2d 585 [7th Cir 1985]; United States v Moon, 718 F2d 1210 [2d Cir 1983]; Government of Virgin Islands v Parrott, 476 F2d 1058 [VI Cir 1973]; United States v Ceja, 451 F2d 399 [1st Cir 1971]).

. Insofar as relevant, section 2 of article I of the NY Constitution reads as follows: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever * * * [a] jury trial may be waived by the defendant in all criminal cases * * * by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.”

. Under English practice, trial by jury had to be expressly accepted by the accused. The silent could not be tried and were subject to peine forte et dure, tortured with iron weights upon one’s back until he accepted a jury or died. (2 Pollock and Maitland, History of English Law, at 651 [2d ed 1911].) Many would suffer it, preferring death by torture to conviction by a jury. Felony conviction caused forfeiture or escheat; thus, in this way lands and goods were preserved for one’s family. This absurd practice was not abolished until 1772. (1 Hollsworth, History of English Law, at 326 [7th ed 1956].)

. Among the resolutions adopted by the Stamp Act Congress on October 19, 1765 — resolutions deemed by their authors to state "the most essential rights and liberties of the colonists” — was the declaration: "That trial by jury is the inherent and invaluable right of every British subject in these colonies.” (Perry, Sources of Our Liberties, at 270 [1959].)

. The First Continental Congress, in the resolve of October 14, 1774, objected to trials before Judges dependent upon the Crown, and to trials in England for crimes alleged to have been committed in the colonies, in these words: "That the respective colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinage, according to the course of that law.” (Perry, Sources of Our Liberties, at 288 [1959].)

. In the Declaration of Independence are found strong objection to the king making "judges dependent on his will alone” and to his "depriving us, in many cases, of the benefits of trial by jury”, and to his "transporting us beyond seas [to England] to be tried”.

. "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury” (US Const, art III, § 2, cl 3).

. The First Department affirmed without opinion. A lone dissent noted: "[TJhere was an insufficient inquiry to ascertain the reason for the defendant’s desire to vacate the jury waiver * * * the court conducting] no real inquiry before denying the application”. (People v McQueen, 70 AD2d 565, 566 [Fine, J., dissenting].)