No. 88,096

STATE OF KANSAS, *Appellee,* v. BINH LY, *Appellant.*
(85 P.3d 1200)

 Opinion
filed March 19, 2004. 

*Debra J. Wilson*, capital appellate defender, argued the cause and was on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: Binh Ly appeals his convictions for one count each of felony murder, K.S.A. 21-3401, and aggravated burglary, K.S.A. 21-3716.

On May 24, 2001, 20-year-old Chanh Chantivong and his younger twin brothers, Chin and Done, were at Woody Sim's house for haircuts. Several other young men, who were suspected to be members of the East Side Crips gang, were also at Sim's house. Because Sim's house had formerly been a duplex, his bedroom had an exterior door leading onto the front porch. The young men were hanging out in Sim's bedroom and on the front porch.

During the evening, the young men had a conflict with a rival gang member who had fired shots at Sim's house. Afterwards, Chanh sent Done home to get Chanh's gun. When Done returned, the group of young men at Sim's house sat on the deck and discussed the earlier shooting incident. They kept all of the lights off because the police were patrolling the area and they did not want to attract attention. At about midnight, Done saw two cars following each other down the street. The two cars parked near Sim's house. A group of people ran from the cars, kicked in the door to Sim's bedroom, and turned on the lights. Some of the young men ran from the deck to the backyard, but Chanh ran into the house with his gun. A round of gunshots followed, and the group ran back to their cars and drove away. Witnesses estimated that the shooting lasted about 1 minute, but when it was over, Chanh lay dead on the floor. He had been shot 16 times and stabbed once.

Police found 26 cartridge casings in Sim's bedroom from four different caliber weapons. The ballistics report indicated that

Chanh's attackers used five different guns, but the only gun police recovered from the scene was Chanh's.

Ly became a suspect in Chanh's murder when Salina police responded to a statewide alert for anyone reporting to a hospital with gunshot wounds. Ly sought treatment at the Salina Hospital for two gunshot wounds. A hospital employee notified the Salina police, who questioned Ly and his companions about Ly's injuries. Both Ly and his companions told the Salina police that Ly had been shot while he was urinating near the highway in Salina. However, a firearms expert analyzed the bullet removed from one of Ly's wounds and determined that it had been fired from Chanh's gun. After his arrest, Ly admitted to being present at the shooting but told police that he did not have a weapon. Ly gave the police the names of three individuals who were armed.

· The State charged Ly with one count of aggravated burglary and one count of first-degree murder under alternative theories of premeditated murder and felony murder. The case was originally set for trial on August 13, 2001, but the State received a continuance, over Ly's objection, until September 10, 2001, to get the ballistics report completed. On September 5, 2001, the State orally advised Ly's counsel of the results from the ballistics report. The next day, Ly's counsel orally moved for a continuance to get a ballistics report from an independent firearms expert. The court denied Ly's request.

At trial, Ly claimed ignorance as a defense. He told police that he thought he was going to a party and that no one had talked about any shooting. Disbelieving Ly's claim of ignorance, the jury found him guilty of felony murder and aggravated burglary. Ly appeals directly to this court pursuant to K.S.A. 22-3601(b)(1).

Ly first argues that the trial court should have granted him a continuance to find a firearms expert to rebut the State's ballistics report, which placed six guns at the shooting, including the gun used by the victim. Ly claims that his request for a continuance should have been granted because the trial court granted the State's motion for a continuance to complete the ballistics report, and he was denied an opportunity to prepare a response. Ly asserts that his ability to rebut the State's ballistics report was critical to

his defense because it contradicted his claim that there were only three shooters.

The trial court has discretion to grant or deny continuances. An appellate court will not disturb the trial court's ruling unless the defendant can show that the trial court abused its discretion and prejudiced his or her substantial rights. Judicial discretion is abused when no reasonable person would adopt the position taken by the trial court. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

In *State v. Snodgrass*, 252 Kan. 253, 264, 843 P.2d 720 (1992), the defendant requested a continuance 2 days before trial to pursue independent DNA testing. This court held that it was not an abuse of discretion to deny the defendant's request because the defendant's counsel chose to wait until the State's testing was complete to request the independent testing. 252 Kan. at 264. The *Snodgrass* court concluded that the defendant could not complain of his own counsel's inaction when he could have pursued the independent testing long before the State's test results were complete and the trial date had arrived. 252 Kan. at 264.

Like the defendant in *Snodgrass*, Ly chose to wait until he received the State's report before requesting independent ballistics analysis. Ly knew that the State was analyzing the shell casings and planned to use the ballistics report. His attorney understood the importance of the ballistics report and could have requested independent testing prior to 4 days before the trial was scheduled but chose not to pursue that course of action. Ly cannot now complain of his attorney's inaction.

In *State v. Daigle*, 220 Kan. 639, 642, 556 P.2d 400 (1976), *cert. denied* 430 U.S. 983 (1977), the State admitted evidence from an expert who analyzed the torn edges of two pieces of a wrapper and testified that the two pieces came from the same wrapper. When the State discovered the evidence during the trial, the defendant requested a continuance to find an out-of-state "fracture expert" to rebut the State's evidence. 220 Kan. at 645. This court upheld the denial of the defendant's continuance, finding that the defendant failed to demonstrate any prejudice and relying on the defendant's failure to seek testing after the trial concluded in preparation for a motion for a new trial. 220 Kan. at 645.

This case is also like the *Daigle* case. Although Ly indirectly argues that he was prejudiced because forensic experts have been known to testify falsely, he fails to establish any actual prejudice. Ly cites two federal cases involving deception by forensic experts in criminal trials. However, Ly fails to point to any evidence indicating that the forensic expert in this case testified falsely at his trial or in any previous trial. Ly could have had independent testing done after his trial and presented any contrary findings to the trial court in a motion for a new trial based on new evidence. Like the defendant in *Daigle*, Ly did not avail himself of this relief. Without any evidence to establish that the State's forensic expert was lying or that his findings were inaccurate, Ly has failed to establish any reason for granting his motion for a continuance.

Ly also failed to take advantage of the trial court's offer to reconsider his motion for a continuance before the trial began if he found a firearms expert that would provide new information regarding the issue. Ly had 4 days to locate and discuss the matter with another firearms expert but chose not to pursue that course of action. Ly did not present any further evidence to the trial court to demonstrate his need for a continuance.

In *State v. Burnison*, 247 Kan. 19, 795 P.2d 32 (1990), this court addressed the issue of a continuance to investigate last-minute evidence. Six days before the trial started, the prosecutor discovered that the victim's cigarette lighter was in the defendant's property envelope at the county jail. The prosecutor mailed a copy of the report to the defendant's attorney, who received the report 3 days before trial. On the day of trial, the defendant filed a motion in limine, seeking to prevent the State from mentioning the lighter in its opening statements, but the motion was denied. Four days later, the defendant filed a motion to suppress the lighter. The trial court denied the motion 5 days later and denied the defendant's motion for a continuance. This court upheld the trial court's denial, noting that the defendant made no attempt to investigate the evidence during the 7-day period between the discovery of the evidence and the introduction of evidence at the trial. 247 Kan. at 31-32.

The same analysis applies in this case. The trial court gave Ly 4 days to locate another firearms expert, stating that it would reconsider its decision if Ly could demonstrate a reason to grant the continuance. Ly failed to make any effort to locate another firearms expert or otherwise investigate the State's ballistics report. With no evidence to support a different ruling, the trial court did not abuse its discretion in denying Ly's request for a continuance.

Ly's argument that he was prejudiced because he could not get an independent ballistics expert is further diminished by the State's theory of the case. Although the State attempted to prove that Ly was an actual shooter, it argued in the alternative that he was guilty as an aider and abetter. There is no dispute that Ly was present at Chanh's murder. A bullet fired from Chanh's gun was removed from Ly's leg, and Ly admitted he was present at the shooting. Ly's only defense was ignorance. He claimed that he was unaware of the group's intentions to break in the door and hurt someone and thought the group was just going to a party.

The number of guns does not affect the aiding and abetting theory of guilt. Either Ly knew what the group planned to do or he did not. If he knew that the group planned to break in and shoot someone, then his presence indicates his ratification of those acts, making him an aider and abetter. We can infer from the verdict that the jury did not believe Ly's defense. Without that defense, Ly is guilty whether he actually had a gun and shot the victim or not.

Ly cites *State v. Anthony*, 257 Kan. 1003, 898 P.2d 1109 (1995), for the proposition that this court considers a five-factor test in determining whether the trial court should have granted the defendant's motion for a continuance. Ly misapplies the test from *Anthony*. In *Anthony*, the issue was whether the court should have granted the defendant a continuance so his newly retained counsel could prepare for trial. The five-factor test considered by the *Anthony* court specifically balances a defendant's right to secure counsel of his or her choice against the court's discretionary power to deny continuances. *Anthony* is not on point. Ly did not request a continuance so he could retain new counsel. Consequently, the five-factor test from *Anthony* does not apply.

In light of the opportunities Ly had to dispute the evidence both before and after trial, Ly cannot now complain of his attorney's actions or inactions. See *Snodgrass*, 252 Kan. at 264. Likewise, Ly has failed to demonstrate any prejudice because the State's case was not based purely on the theory that Ly shot the victim. As a result, we do not believe that the trial court abused its discretion by denying Ly's motion for a continuance to allow him time to locate a firearms expert.

Next, Ly argues that the prosecutor improperly discussed facts that were not in evidence during his closing arguments. Specifically, Ly claims that there is no evidence to support the prosecutor's statement that there were five people plus the victim at the scene and that all five people had guns. Ly, however, raised no objection to either of these statements at trial.

Generally, when there is no objection at trial, there can be no reversible error based on a prosecutor's misconduct during closing argument. However, if the prosecutor's statements violate a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process, an appellate court may find reversible error without a contemporaneous objection. When this court determines that the claimed error may violate a defendant's right to a fair trial, it will consider the error. *State v. McCorkendale*, 267 Kan. 263, 278, 979 P.2d 1239 (1999).

We apply a two-step analysis to determine the effect of a prosecutor's alleged improper remarks in closing argument. First, we consider whether the remarks are outside the considerable latitude allowed to the prosecutor in discussing the evidence. The prosecutor is given wide latitude in both the language and the manner of presentation of closing argument so long as the argument is consistent with the evidence. Second, we must determine whether the remarks constitute plain error. Plain error occurs when the prosecutor's remarks are so gross and flagrant as to prejudice the jury against the defendant and deny the defendant a fair trial, requiring reversal. 267 Kan. at 278-79.

A prosecutor's remarks during closing argument are so gross and flagrant that they deny the defendant a fair trial when the reviewing court, using a harmless error analysis, finds that the error would

have changed the result of the trial. Otherwise, the court must be willing to declare beyond a reasonable doubt that the error was harmless. 267 Kan. at 279.

Based on our review of the record, the prosecutor's statement that five people entered Sim's room is supported by the evidence. Because Ly did not object to this statement, we decline to consider his claim of error in this regard.

However, we will consider Ly's claim that the prosecutor committed misconduct with the following statement:

"When [Sovong Vann] wakes up, he sees guys moving across his bed out the door. He says everybody had guns. He can recall the description of one of the people, and they had on a yellow shirt and that that person with the yellow shirt had a gun. He says all of them had guns."

Our review of the record reveals that this statement is not supported by evidence introduced at trial. Vann testified that he saw an Asian male in a yellow shirt with a gun. Vann did not make any statements to indicate that all of the intruders had guns. Ly claims that this error requires reversal because without it, the prosecutor could not establish that Ly had a weapon.

The fundamental rule for closing arguments is that the prosecutor must confine his or her remarks to matters in evidence. It is clearly improper for the prosecutor to state facts that are not in evidence. *State v. Gardner*, 264 Kan. 95, 105-06, 955 P.2d 1199 (1998). Because the prosecutor's statement was not supported by the evidence, it was outside the considerable latitude allowed to prosecutors in discussing the evidence. Therefore, we must proceed to the second step in our prosecutorial misconduct analysis— whether the statement constituted plain error. See *McCorkendale*, 267 Kan. at 278.

In *Gardner*, the prosecutor told the jury during closing argument that the defendant's bloodstained boots were found under the victim's tools. This court determined that the prosecutor's remark was a misstatement of fact but found it to be harmless error because the jury heard evidence that the victim's tools were found in the same house as the defendant's boots. 264 Kan. at 106. The *Gardner* court determined that the State's improper allegation was not a significant part of the State's case. 264 Kan. at 106.

The reasoning from *Gardner* applies in this case. Although the prosecutor's statement in this case is improper, the error is harmless because the State's misstatement of fact was an insignificant part of its case. Vann testified that he saw a person with a yellow shirt carrying a chrome gun. Ly admitted to Detective Relph that he was wearing a yellow shirt at the time of the shooting. The prosecutor connected Ly to the person in the yellow shirt in his closing argument. Thus, the prosecutor's statement that the person with the yellow shirt carried a gun and his argument that Ly carried a gun is supported by the evidence. The additional statement that everyone had a gun has no real import. See *Gardner*, 264 Kan. at 106.

Furthermore, Ly's argument overlooks the State's aiding and abetting theory. Under that theory, the State did not have to place a gun in Ly's hands to prove first-degree murder. All the State had to prove was that Ly was not an inadvertent witness. The jury's verdict indicates that it did not believe Ly's claim that he was an inadvertent witness.

Because the prosecutor's statement had no significance to the State's case and was unnecessary under the State's alternative theory of guilt as an aider and abetter, the error, when viewed in light of the whole record, would not have changed the verdict or the result of the trial.

For his final issue, Ly argues that there is insufficient evidence to support his convictions. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in a light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. See *State v. Beach*, 275 Kan. 603, 610-11, 67 P.3d 121 (2003).

Ly claims that his mere presence did not constitute aiding and abetting. The mere presence of the defendant at the time and place of the crime is insufficient for establishing the defendant's guilt for that crime. However, if, from the facts and circumstances surrounding the defendant's presence and the defendant's conduct, it appears that the defendant's presence did in fact encourage some-

one else to commit the crime, guilt may be inferred. If the defendant's conduct does not demonstrate a design to encourage, incite, aid, abet, or assist in the crime, the factfinder may consider the defendant's failure to oppose the commission of the crime, along with other circumstances, and conclude that the defendant assented to, approved of, or encouraged the commission of the crime, thereby aiding and abetting the commission of the crime. *State v. Wakefield*, 267 Kan. 116, 121, 977 P.2d 941 (1999) (holding that defendant's willing participation in an aggravated burglary, his failure to oppose his companion's premeditated murder of the residents, and his continued actions in loading the victim's property after the murders constituted sufficient evidence for finding defendant guilty of first-degree premeditated murder as an aider and abetter).

Ly relies on *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985), to support his theory that he was not guilty of aiding and abetting because he was merely along for the ride. In *Green*, the defendant was charged with theft as an aider and abetter for driving the getaway car. This court upheld the trial court's dismissal of the charge for lack of probable cause, finding that the defendant was a "mere associate" of the principals and there was no evidence that he willfully furthered the crime. 237 Kan. at 149. However, three justices dissented, finding that the majority disregarded evidence favoring the State. 237 Kan. at 149-50. The dissenting justices determined that Green assisted in the crime by driving away from the scene to prevent detection while his companions carried out the theft and by returning with the car to pick up his companions and the stolen goods. 237 Kan. at 150. The key to the *Green* court's analysis is the evidence.

Ly's argument that he was merely along for the ride overlooks several key pieces of evidence. First, Ly was shot twice by the victim. One bullet entered the front of Ly's thigh and penetrated to the back of his buttocks, where it remained. These wounds indicate that Ly was facing Chanh when Chanh shot him.

Second, one of the eyewitnesses described a man in a yellow shirt with a gun. This testimony is not disputed. Ly admitted to

police that he had a yellow shirt on at the time of the shooting. Based on this evidence, it is reasonable to infer that Ly had a gun.

Third, the victim's brother observed the two cars as they approached the house and testified that the people in both cars ran together to the front door and kicked in the front door. The victim's brother also testified that the group of people ran back to the cars together after the shooting. The witness estimated that the entire incident took about 1 minute. This testimony contradicts Ly's statement that he and a friend remained in the car for about 45 seconds after the others walked up to the house. The fact that the people from both cars ran to the door together implies that they coordinated their actions before arriving at the house. This evidence negates Ly's claim that the group did not discuss the shooting prior to arriving at Sim's house and his claim that he did not know what was going on. From this evidence, the jury could have inferred that Ly encouraged and participated in the incident regardless of whether he possessed or shot a gun.

Fourth, the shooting occurred at about midnight. The victim's brother testified that all of the lights were off at the house because there were police in the area and they did not want to attract attention. This evidence negates Ly's claim that he thought there was a party going on at the house. If there had been a party going on, the lights would not have been off.

Finally, the crime scene investigator testified that the exterior door had been forced open and that the deadbolt lock on the door was engaged. When this evidence is considered in connection with the testimony that the group ran to the house together, it further contradicts Ly's claims that he thought there was a party and he did not know how the others had entered the room. If there had been a party, the door would not have been forced open with the deadbolt engaged.

Other than Ly's statement to Detective Relph, there is no evidence to support his theory that he thought he was going to a party. Considering these key pieces of evidence and making all reasonable inferences in favor of the prosecution, we conclude that a rational

factfinder could have found Ly guilty beyond a reasonable doubt of felony murder with aggravated burglary as the underlying felony.

Affirmed.