IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,591

STATE OF KANSAS,
*Appellee*,

v.

DONALD RAMON HAYGOOD,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, evidence that a person committed a crime or civil wrong on a prior specified occasion is inadmissible to prove that person has a propensity to commit crimes or civil wrongs as a basis to support an inference that person committed the currently alleged crime or civil wrong on a specified occasion, unless such evidence is admissible as relevant to prove some other material fact, such as motive.

2.

Although motive is not an element of premeditated first-degree murder, evidence of its existence can be highly persuasive circumstantial evidence of guilt. Therefore, evidence of prior crimes or civil wrongs relevant to prove the defendant's motive to commit premeditated first-degree murder can be admissible under K.S.A. 2017 Supp. 60-455.

3.

An appellate review of a claim of prosecutorial error involves a two-step process. First, the appellate court must decide whether the challenged prosecutorial act falls outside the wide latitude afforded prosecutors to conduct the State's case and attempt to

obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. Only if that error is found, the appellate court moves to the second step of determining whether the error prejudiced the defendant's due process rights to a fair trial, utilizing the constitutional harmlessness inquiry from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error will not or did not affect the trial's outcome in light of the entire record, i.e., when there is no reasonable possibility the error contributed to the verdict.

4.

It is clearly improper for a prosecutor to state facts to the jury that have not been admitted into evidence, but prosecutors are allowed to craft arguments that include reasonable inferences to be drawn from the admitted evidence.

5.

A prosecutor who misstates the law to the jury has crossed the line, falling outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction.

6.

The State has the burden to prove, beyond a reasonable doubt, that the defendant committed the charged crime, and it is error for a prosecutor to attempt to shift the burden of proof to the defendant. But a prosecutor does not shift the burden of proof by pointing out to the jury that there is a lack of evidence to support a defense theory.

7.

A prosecutor arguing to a jury is forbidden from accusing the defendant of lying, or otherwise offering a personal opinion as to the defendant's credibility. But when a case

develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on the admitted evidence, that certain testimony is not believable.

8.

For instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011).

9.

A person is justified in the use of deadly force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to prevent imminent death or great bodily harm to such person or a third person.

10.

The test for self-defense has two parts: a subjective test requiring a showing that the defendant sincerely and honestly believed it was necessary to kill to defend the defendant or others; and an objective standard requiring a showing that a reasonable person in the defendant's circumstances would have perceived the use of deadly force in self-defense was necessary.

11.

A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact-finder to reasonably conclude that the defense applies. Once the defendant satisfies the burden of producing such evidence, the State has the burden of disproving the defense beyond a reasonable doubt.

12.

The defense theory of self-defense is an affirmative defense, and once a defendant properly asserts a self-defense affirmative defense, the State must disprove self-defense beyond a reasonable doubt.

13.

The crime of involuntary manslaughter includes the circumstance when the killing of a human being is committed during the commission of a lawful act in an unlawful manner. The crime of involuntary manslaughter is a lesser included offense of premeditated first-degree murder.

14.

A district court's refusal to give a requested lesser included offense instruction on the crime of involuntary manslaughter, even if erroneous, will not require reversal if there is no reasonable possibility that the error would have changed the jury's guilty verdict for premeditated first-degree murder.

15.

The right to a jury trial under Sections 5 and 10 of the Kansas Constitution Bill of Rights does not give a person the right to have questions of law decided by a jury; resolving legal questions is the function of the court.

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed November 21, 2018. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum*, assistant district attorney, argued the cause, and *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Donald Haygood directly appeals his jury-trial convictions for premeditated first-degree murder and criminal possession of a firearm by a convicted felon. He claims the trial court committed reversible error by admitting evidence of his prior domestic violence and by denying his request for jury instructions on the affirmative defense of self-defense and on the lesser-included offense of involuntary manslaughter. Further, he argues the prosecutor's erroneous comments during closing argument warrant a new trial. We disagree and affirm the convictions.

FACTUAL AND PROCEDURAL OVERVIEW

Haygood does not deny that he shot and killed Demetria Mills in the house he shared with his long-time girlfriend, Georgie Stallings, and her 13-year-old son, G.T. The

disputed testimony at trial involved the manner in which the events unfolded and the way in which Mills acted prior to the shooting.

As background, Stallings and Mills were long-time close friends. Haygood and Mills were also close; Mills' stepmother was Haygood's adopted mother. The three regularly spent time together. In the time leading up to the shooting, Haygood had been drinking more than usual and using a drug called "Molly," which changed his behavior, making him paranoid and more abusive. Stallings and Haygood would often argue when they were drinking, and approximately two weeks before the shooting, during such an argument, Haygood hit Stallings in the lip, making it swell for a few days. Mills learned of the incident after observing Stallings' swollen lip and was concerned for her friend.

On September 16, 2011, Haygood went to a bar around noon and stayed there until Stallings picked him up about 7 p.m. to retrieve their vehicle from a repair shop. After that errand, the couple returned to the bar and consumed a large amount of alcohol throughout the evening. Haygood also took "Molly." Mills joined them at the bar until shortly before 1 a.m., when the three went to another bar. At approximately 3 a.m., Haygood drove the three back to the house he shared with Stallings. At this point, all three were very intoxicated but were not arguing.

Stallings and Mills entered the house first, awakening G.T., who had been asleep on the couch. The trial testimony of Haygood, Stallings, and G.T. as to what transpired after Haygood entered the house differed in some respects. The common theme, however, is that Mills demanded that Haygood leave the house, prompting an argument between them during which Mills threatened to call 911. The argument culminated with Haygood fatally shooting Mills and leaving the house. Haygood's version had Mills rushing him with a knife or what appeared to be a knife, after having said, "I'm gonna show you." Neither Stallings nor G.T. heard Mills threaten to do anything but call 911; neither saw Mills try to attack Haygood with a knife.

6

Two Kansas City, Kansas, police officers testified that, at the house following the shooting, Stallings told them that she and Haygood had gotten into an argument; Mills tried to intervene and said she was going to call 911; and at that point Haygood shot Mills. One of the officers also recalled Stallings relating that Mills was privy to the history of domestic violence between Stallings and Haygood.

Haygood was subsequently apprehended at his sister's house, where the police found a Smith & Wesson .40 caliber handgun. A firearm and tool mark examiner testified that a spent casing found at the crime scene and the bullet recovered from Mills' body matched that handgun. The coroner could not determine the range at which the fatal shot had been fired but opined that Mills died instantly and would not have been able to move after she was shot. That would mean that Haygood shot Mills while she was standing at the location in the house where her slain body was depicted in the crime scene photographs.

Over defense objection, the trial court allowed Stallings to testify about the prior domestic violence that resulted in her swollen lip, ruling it was admissible under K.S.A. 2017 Supp. 60-455. G.T. also testified that he recalled the swollen lip, although he did not witness the incident.

At jury instruction conference, the trial court denied the defense request for a self-defense instruction and a lesser included offense instruction on involuntary manslaughter imperfect self-defense, i.e. Haygood committed a lawful act in an unlawful manner. The trial court instructed the jury on the elements of premeditated first-degree murder and the lesser included offenses of second-degree intentional murder and voluntary manslaughter based on imperfect self-defense (unreasonable but honest belief that circumstances existed justifying deadly force in self-defense). The court also instructed the jury on the

7

defense of voluntary intoxication. The jury convicted Haygood of premeditated first-degree murder.

In an unsuccessful motion for new trial, Haygood again objected to the use of K.S.A. 2017 Supp. 60-455 evidence and the failure to give a self-defense instruction. Haygood timely appeals.

ADMISSION OF K.S.A. 2017 SUPP. 60-455 EVIDENCE

Haygood contends that the trial court erred by allowing the State to present evidence of Haygood's prior acts of domestic violence against Stallings as an exception to the prohibition in K.S.A. 2017 Supp. 60-455 against admitting evidence of specific instances of prior crimes or civil wrongs. He argues that the evidence was not relevant to prove a disputed material fact; that it was used to prove Haygood's propensity to commit the crimes charged; and that its prejudicial effect outweighed its limited probative value.

The admissibility of all evidence of other crimes and civil wrongs is governed by K.S.A. 2017 Supp. 60-455. *State v. Richard*, 300 Kan. 715, 719, 333 P.3d 179 (2014); *State v. Gunby*, 282 Kan. 39, 57, 144 P.3d 647 (2006). K.S.A. 2017 Supp. 60-455 provides in relevant part:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

> "(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

8

*Standard of Review*

The three-part *Gunby* test that a trial judge must use in determining whether to admit evidence under K.S.A. 2017 Supp. 60-455, the corresponding appellate standards of review, and the trial judge's duty to provide a limiting instruction are as follows:

> "'First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.
>
> 'Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed material fact. The appellate court reviews this determination only for abuse of discretion.
>
> 'Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion.
>
> If the evidence meets all of these requirements, it is admitted, but in a jury trial the district court must give the jury a limiting instruction telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose).'" *Richard*, 300 Kan. at 721 (quoting *State v. Torres,* 294 Kan. 135, 139-40, 273 P.3d 729 [2012]).

*Analysis*

The State does not dispute that this issue is preserved for appellate review. Prior to trial, the State filed a "motion to determine admissibility of other crimes evidence," which was granted after a hearing. Subsequently, Haygood was appointed new counsel, who filed an unsuccessful motion to reconsider. At trial, defense counsel objected to the evidence at issue immediately after the evidence was discussed by Stallings. Defense counsel noted his objection was "probably a little late." But the State acknowledged the contemporaneous objection on the record, the trial court ruled on it, and we will review it.

The State points out that while the district court granted its motion to present three incidents of domestic violence between Stallings and Haygood, the State only presented one of the three incidents at trial. In its motion, the State proposed to present the following: (1) two years prior to the homicide, Haygood pushed Stallings, causing her to hit the wall and knock out three of her teeth; (2) several weeks prior to the homicide, Haygood pulled a .40 caliber Smith & Wesson firearm on Stallings, then went outside and shot it; and (3) the week prior to the homicide, Haygood punched Stallings in the mouth, causing her lip to swell. Only the third, swollen lip incident was discussed at trial, albeit one State witness generally discussed Haygood and Stallings' history of domestic violence. Haygood only asserts that the swollen lip testimony constituted error.

In its motion to determine whether the evidence was admissible under K.S.A. 2017 Supp. 60-455, the State asserted the evidence was admissible for the purposes of motive, course of conduct between the parties, and corroboration. The district court agreed with the State that the evidence "matches the statute [K.S.A.] 60-455 regarding motive, course of conduct, and corroboration" and found the State could use the evidence in its case-in-chief so long as the State could present evidence that the victim was aware of the incidents. In denying the motion to reconsider, the trial court further stated:

10

"[T]he prior argument on this motion coincides very closely with the State's summarization of what they expect their evidence to show and that is the motive for your client taking the life of the . . . victim in this case and the manner in which it was done. It also establishes the nature of the stormy relationship between the alleged girlfriend and your client and it shows a pattern of violent conduct with your client and the girlfriend in this case, which would justify and suffice as a motive for the victim in this case wanting to call the police on the defendant. He had been warned."

The district court provided a limiting instruction to the jury which stated that the other crime evidence "may be considered solely for the purpose of proving the defendant's motive, corroboration of testimony and nature of relationship between parties."

Only one of the purposes upon which the jury was instructed to consider the evidence—motive—is a material fact specifically listed as an exception in K.S.A. 2017 Supp. 60-455. Nevertheless, *Gunby* made clear that the list of material facts in K.S.A. 60-455 is exemplary rather than exclusive. 282 Kan. at 56. If the other crimes and civil wrongs evidence is relevant to prove a material fact other than the eight listed, "the evidence must be subjected to the same sort of explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, and prophylactic limiting instruction [the court has] required when any other K.S.A. 60-455 evidence is admitted." 282 Kan. at 57. But here we begin with the listed fact of motive.

*Motive*

As noted, our first step is to determine whether motive was a material fact in this case. Haygood was charged with (1) premeditated first-degree murder and (2) criminal possession of a firearm by a convicted felon. Haygood stipulated that he was a convicted

11

felon for purposes of count 2 and it is not at issue in this appeal. The question is whether the evidence was material to the premeditated first-degree murder charge.

Haygood argues that the evidence was not material because it did not tend to prove any element of the charged crimes. The State counters that the domestic violence evidence was relevant to prove the material fact that Mills threatened to call the police on Haygood, knowing that he beat Stallings in the past, which in turn goes to premeditation or why Haygood would feel he needed to kill Mills under the circumstances. The State wins that argument. "Although motive is not an element of premeditated first-degree murder, evidence of its existence can be highly persuasive circumstantial evidence of guilt. It is the 'moving power that impels one to action for a definite result.'" *State v. Vasquez*, 287 Kan. 40, 52, 194 P.3d 563 (2008) (quoting *State v. Reid*, 286 Kan. 494, 504, 186 P.3d 713 [2008]). As stated in *State v. Engelhardt*, 280 Kan. 113, 128, 119 P.3d 1148 (2005): "Motive supplies the jury with some degree of explanation, responding to a juror's natural tendency to wonder why a defendant behaved in the manner described by the State. Often it is a prominent feature of the State's theory of its case." See also *State v. Carapezza*, 286 Kan. 992, 999, 191 P.3d 256 (2008) (citing *State v. Jordan*, 250 Kan. 180, 191, 825 P.2d 157 [1992], as support for the proposition that the State can present evidence of motive even though it is not an element of the crime charged).

Moreover, even Haygood recognizes that "the primary dispute involved the circumstances surrounding the shooting." The evidence in this case would have been highly confusing without the explanation of why Haygood would feel the need to kill Mills when she called the police. In short, the evidence was material to Haygood's prosecution for premeditated first-degree murder.

The answer to step two—whether the material fact was disputed—can be found in Haygood's own appellate brief where he contends: "The only fact that was in dispute was the reason why Mr. Haygood shot Mills." Haygood denied premeditation, testifying that

12

he shot Mills in self-defense and affirmatively stating that he had not planned the killing or intended to do it.

In *Reid*, this court held evidence that the defendant had been fired from a store for stealing money from the cash register was material to and probative of motive because it tended to explain why he would return to that same store to rob and kill the clerk. 286 Kan. at 507, 509-10. In *State v. Ruebke*, 240 Kan. 493, 502-03, 731 P.2d 842 (1987), this court held evidence of defendant's prior thefts was admissible to show his motive to kill. The State's theory in the first-degree murder prosecution was that the defendant needed money, so he committed a theft during which the victims discovered him. The earlier thefts tended to explain why he then killed the victims—to prevent his being identified and his probation revoked in the earlier theft cases. Similarly, here, the domestic violence incident had a tendency in reason to prove the disputed material fact:  Haygood shot Mills to prevent her from calling the police to report domestic violence.

Haygood argues that, even if motive was disputed, the *reason* Mills was calling the police, and thus the prior bad act, did not tend to prove motive. But, of course, the fact that Mills could report a recent crime of domestic violence that might lead to Haygood's prosecution for a crime explains why Haygood might kill to prevent the completion of the 911 call. Indeed, Haygood undercuts his own argument later in his brief when he asserts, "The main question in dispute was Mr. Haygood's reason for shooting Mills." In closing, the State argued:

> "He had motive. Is it a good motive because she was gonna call the police on him? No. Most murders don't happen with a good reason. But he had a reason to do it. She told him when he got in the house that she didn't want her—him touching her friend and that she was gonna call the police on him. And it wasn't until she actually picked up that phone and acted as if she was on the phone with the police that he shot her. That goes to premeditation."

Finally, the testimony was prejudicial; most prior crimes or civil wrongs evidence shines an unfavorable light on a defendant. But the probative value of the evidence heavily outweighed that prejudice. The domestic violence incident was the key evidence of motive—it explained why Haygood would care that Mills was calling the police. It helped explain to the jury what might otherwise have seemed inexplicable. Accordingly, we hold that the trial court did not err in admitting the prior domestic violence evidence to show motive.

Given our determination that the evidence was obviously admissible to show motive, we do not reach the State's alternative arguments as to why the evidence was admissible on other material facts. See *State v. McCune*, 299 Kan. 1216, 1228, 330 P.3d 1107 (2014) ("Based on this conclusion [that the trial court did not err in admitting evidence to show the relationship of the parties], we need not consider the State's alternative argument that the district court properly admitted the evidence to show McCune's ongoing course of conduct."); see also *State v. Boggs*, 287 Kan. 298, 310, 197 P.3d 441 (2008) ("[A] district court's admission of evidence under K.S.A. 60-455 may be upheld on review even if its rationale was in some way erroneous if an appellate court determines that the evidence was otherwise admissible under the statute.") (citing *Vasquez*, 287 Kan. at 51-53; *Reid*, 286 Kan. at 509-12).

PROSECUTORIAL ERROR IN CLOSING ARGUMENT

Haygood next argues the prosecutor committed reversible error during closing argument that prejudiced the jury and deprived him of his constitutional right to a fair trial. The specific contentions are that the prosecutor's comments during closing argument misstated the facts or law, argued facts not in evidence, commented on witness credibility, and attempted to shift the burden to the defendant to disprove his guilt. Although the defense did not object to the arguments at trial, a claim of prosecutorial

error is reviewable on appeal even absent a contemporaneous objection. *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015).

*Standard of Review*

This claim of prosecutorial error is governed by *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016).

> "In *Sherman* we recited the standard of review as a two-step process in which an appellate court must first decide whether a prosecutorial act complained of falls outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. 305 Kan. at 109. If that error is found, 'the appellate court must next determine whether [it] prejudiced the defendant's due process rights to a fair trial.' 305 Kan. at 109. And to do that, the court uses the constitutional harmlessness inquiry from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). 305 Kan. at 109. Prosecutorial error is harmless if the State proves beyond a reasonable doubt the error will not or did not affect the trial's outcome in light of the entire record, *i.e.*, when there is no reasonable possibility the error contributed to the verdict. *Sherman*, 305 Kan. at 109." *State v. Love*, 305 Kan. 716, 728, 387 P.3d 820 (2017).

*Analysis*

We begin by looking at the first step in the analysis—whether the prosecutor's remarks are outside the wide latitude afforded to prosecutors—with respect to each of the allegedly erroneous comments. That first-prong analysis is the same as it was before *Sherman*. *State v. Banks*, 306 Kan. 854, 862, 397 P.3d 1195 (2017).

15

*Misstated Facts or Law and Argued Facts Not in Evidence*

Haygood combines his argument on the claims that the prosecutor misstated the facts or the law and that the prosecutor argued facts not in evidence. That combination makes it difficult to discern the facts Haygood believes the prosecutor argued that were not in evidence. He mentions that the prosecutor argued that Haygood's version of events "was contradicted by the 'coldhearted facts,' such as his 'testimony about what he didn't do.'" Apparently, the suggestion is that by arguing what Haygood did not do, such as disengage from the argument and leave the house, the prosecutor was arguing facts not in evidence. But Haygood testified as to both what he did and did not do. Moreover, if the evidence establishes one thing, such as Haygood went to the bedroom and returned to the living room to resume arguing with Mills, it necessarily establishes that a contradictory thing did not occur, such as Haygood disengaging and leaving the house by the front door.

"[I]t is clearly improper for a prosecutor to state facts that are not in evidence." *Banks*, 306 Kan. at 862 (citing *State v. Ly*, 277 Kan. 386, 393, 85 P.3d 1200 [2004]). "But, on the other hand, prosecutors are allowed '"to craft arguments that include reasonable inferences to be drawn from the evidence."'" 306 Kan. at 862 (quoting *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 [2010]). Here, the prosecutor's comments and arguments contained facts that were either placed in evidence or which were reasonably inferred from the trial evidence; there was no prosecutorial error in that regard.

Haygood's complaint that the prosecutor misstated the law presents a closer question. The jury was instructed on the charge of premeditated first-degree murder and the lesser included offenses of second-degree intentional murder and voluntary manslaughter based on imperfect self-defense. The imperfect self-defense theory was based on Haygood's testimony that Mills had retrieved a knife from the kitchen and just

16

before he shot Mills, she was rushing towards him with "the knife or what looked like a knife" in her hand. A knife was found in the kitchen sink.

Specifically, Haygood complains that the prosecutor misstated the law by telling the jury that "if you can't from the evidence in this case find that this knife was never used [*sic*] against the defendant, then voluntary manslaughter doesn't apply." First, the use of double negatives renders that statement nearly unintelligible. If it was intended to mean that Haygood could not be convicted of voluntary manslaughter unless Mills had actually attacked Haygood with a knife, it would be an incorrect statement of the law. In *State v. Qualls*, 297 Kan. 61, 70-71, 298 P.3d 311 (2013), we held that the defendant could have been convicted of voluntary manslaughter for fatally shooting a victim that the defendant honestly believed was drawing a gun from his waistband, even though the victim did not actually possess a gun. But it is incumbent on a reviewing court to consider a prosecutor's comments in the context in which they are made, not in isolation. See *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014). The applicable portion of the State's closing argument is as follows:

> "In addition to that, the defendant's testimony about what he didn't do makes absolutely no sense. He tells us he had his gun on him the whole time. She pulled a knife on him at one point when he's on the far side of that kitchen. He can't tell us why he wouldn't have just pulled the gun on her then and said, hey, back up. This is getting dangerous.

> "Instead, what he tells us he did is he walks past the front door, which is closer to him than the garage door, walks around the living room, walks back near Demetria Mills and wants to go sit in the garage by himself. And that's when he pulls the weapon. That makes no sense. *And if you can't from the evidence in this case find that this knife was never used* [sic] *against the defendant, then voluntary manslaughter doesn't apply.* That moves us to premeditation." (Emphasis added.)

17

In context, the prosecutor was attempting to tell the jurors that voluntary manslaughter only applied if they accepted Haygood's statement about believing Mills was going to attack him with a knife and that the evidence, including Haygood's actions and inactions, refuted that Haygood possessed any such self-defense belief. While the prosecutor's statement was inarticulately phrased, it did not rise to the level of prosecutorial error. Cf. *State v. Carter*, 305 Kan. 139, 151, 380 P.3d 189 (2016) ("A prosecutor 'cross[es] the line by misstating the law.' [Citation omitted.]").

Haygood also asserts that the prosecutor misstated the law by telling the jury that the lesser included offenses could only apply if Haygood would have done "any of the universe of things he could have or would have done." Again, the statement in isolation is misleading. What the prosecutor said in the State's rebuttal portion of closing argument is as follows:

"He didn't do any of the universe of things he could have done if this was a voluntary manslaughter case or even a second degree murder case. He didn't use a cell phone that he had all night, the one that he used to call his sister when he left after shooting her. He didn't just simply stay in his bedroom or walk away from the situation either out of the front door or close the door of the bedroom. He didn't holler and scream at her, call her names. He could have done that. He could have even beat the crap out of her, excuse my language, but he could have if he was that mad and it wouldn't have resulted in her death. He didn't do any of those things. What he did do is he separated himself from the argument, went back to his room for a period of time, comes out, walks that distance, takes those moments, and that's ample time to think about killing her, without saying a word, shoots her with one good shot to the head that accomplishes its purpose and then quietly leaves. That's what he did.

"This could not have happened under the facts described in this case without some sort of premeditation. If it was simply intentional, he would have shot her when the argument started. But it built and it built on him. He started with a [*sic*] argument. He got mad. He went back to his room and, at that point, he made the decision when she said she

18

was calling the police that he was gonna go out and kill her and that's exactly what he did."

The distinguishing feature of premeditated first-degree murder is premeditation, which PIK Crim. 4th 54.150(d) defines as follows:

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

Moreover, we have expanded on the definition of premeditation and discussed factors that may be indicative of premeditation. See *State v. Bernhardt*, 304 Kan. 460, 464, 472, 372 P.3d 1161 (2016); see also *State v. Scott*, 271 Kan. 103, 108-09, 21 P.3d 516 (2001) (discussing nearly verbatim each of the additional factors listed in the premeditation instruction at issue in *Bernhardt*).

The prosecutor properly applied the law regarding premeditation to the facts of this case. Moreover, the prosecutor pointed out to the jury why Haygood's actions and inactions were indicative of his having formed the design or intent to kill Mills before the act and, therefore, they were not indicative of his having committed the lesser included offenses. We discern no misstatement of the law here.

*Attempt to Shift the Burden of Proof*

Haygood points to *State v. Pabst*, 268 Kan. 501, 511, 996 P.2d 321 (2000), where we said it is the State's burden to prove the defendant guilty of the charged crime and the State does not meet that burden by simply convincing the jury to disbelieve the defendant's testimony. Haygood then twists that concept into an argument that the prosecutor's comments about Haygood's testimony relating what he did not do was an

19

attempt to shift the burden to Haygood to prove that he was not guilty. We disagree with that characterization.

The prosecutor pointed out Haygood's testimony to show that his admitted actions and inactions were consistent with the State's theory of a premeditated killing and inconsistent with the defense theory of an imperfect self-defense. As this court held in *State v. Williams*, 299 Kan. 911, 940, 329 P.3d 400 (2014), "a prosecutor does not shift the burden of proof by pointing out a lack of evidence to support a defense." See also *Stone*, 291 Kan. at 17-19 (holding prosecutor did not attempt to shift burden of proof by arguing defendant had significant "obstacles to overcome"). There was no burden-shifting to be implied from the State's closing arguments.

*Comments on Witness Credibility*

Finally, Haygood argues the prosecutor impermissibly commented on his credibility. "A prosecutor is . . . forbidden from accusing a defendant of lying." *State v. Fisher*, 304 Kan. 242, 253, 373 P.3d 781 (2016).

> "The prohibition extends not only to using the word 'lie' but also to its 'derivative.' See *State v. Elnicki*, 279 Kan. 47, 62, 105 P.3d 1222 (2005) (prosecutor called defendant's testimony a 'fabrication,' 'yarn,' 'final yarn,' 'the yarn spun here,' and 'four-part yarn'); see also *Akins,* 298 Kan. at 607 (prosecutor asked did the jury 'buy' defendant's story and said his testimony was 'not credible').
>
> "But prosecutors are permitted 'to point out inconsistencies in a defendant's statements and to argue evidence that reflects poorly on a defendant's credibility.' *Akins*, 298 Kan. at 608; see *State v. Duong,* 292 Kan. 824, 831-32, 257 P.3d 309 (2011) (not improper commentary on credibility to identify specific evidence supporting wholly-evidence-based argument victim's testimony was more believable than defendant's). The comments are considered in the context in which they were made, not in isolation. *Duong,* 292 Kan. at 831." *Brown*, 300 Kan. at 560.

20

See also *Pabst*, 268 Kan. at 507 ("When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury.").

Haygood points out that the prosecutor called Haygood's testimony about Mills' killing "inconceivable"; that the prosecutor said Haygood's testimony about what he did not do "makes absolutely no sense"; and that the prosecutor argued Haygood's testimony "on its face" showed that he "never believed" Mills was armed. As the State points out, Haygood bolsters this argument by piecing together words and phrases snipped out of context. See *Brown*, 300 Kan. at 560 (court must consider prosecutor's comments in context in which made, not in isolation). For instance, after stating that Haygood's testimony about what happened was "inconceivable," the prosecutor explained: "And I don't say that as an expression of my own personal belief. I say that because the evidence supports that." The prosecutor then proceeded to describe the evidence that made Haygood's version of events unlikely.

In *State v. Baker*, 281 Kan. 997, 1014, 135 P.3d 1098 (2006), the prosecutor said the defendant's implausible story "'defies physics, it defies logic, and it certainly defies common sense.'" This court rejected the defendant's argument that these comments were akin to calling him a liar; "[i]nstead, the prosecutor pointed out the weaknesses in [the defendant's] story by reminding the jury of [the victim's] physical disabilities" and the contrasting evidence at trial. 281 Kan. at 1014-15. That is the circumstance presented here. The prosecutor called Haygood's story—that Mills rushed him with a knife— "inconceivable" because it was in stark contrast to all of the evidence at trial, including the reasonable inferences to be drawn therefrom. There was no *Pabst* "liar" violation here.

21

*Reversibility*

Because we find that the prosecutor did not fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial, we discern no prosecutorial error that requires a harmlessness analysis.

REQUESTED INSTRUCTIONS ON SELF-DEFENSE AND INVOLUNTARY MANSLAUGHTER

Haygood argues the district court erred when it refused his requests to instruct the jury on the affirmative defense of self-defense and the lesser included offense of involuntary manslaughter imperfect self-defense (by the commission of a lawful act in an unlawful manner).

*Standard of Review*

"[F]or instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.*] *Ward*[, 292 Kan. 541, 565, 256 P.3d 801 (2011)]." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

*Analysis*

In denying the self-defense and involuntary manslaughter imperfect self-defense jury instructions, the district court and defense counsel had the following colloquy:

"THE COURT:  Well, a self-defense instruction requires two things, in this Court's opinion, based upon case law and the statute, a subjective and a reasonable belief that the use of force was necessary. As far as the first degree and second degree counts are concerned, the defendant's testimony, while he said he thought she was rushing him with a knife, there's no objective evidence whatsoever. There's no reasonable evidence whatsoever . . . to back that up. There was no knife found. There was no evidence from the other two people in the residence that indicated the victim behaved in an aggressive manner with a weapon in her hand or rushed the defendant. The only testimony is the defendant's testimony. And while he's certainly entitled to his theory of a defense, there has to be some reasonable basis for that in order for this Court to instruct in the law.

"I—I don't see that based on the evidence in this case and I'm gonna deny your request for a self-defense in the first degree and the second degree intentional counts. I'm granting you the imperfect self-defense for voluntary manslaughter and I'm doing that grudgingly. Frankly, I don't think that should be given because it requires an intent or at least . . . a knowing mental state for the defendant to kill the victim in this case and based upon his testimony, there's no evidence of that.

"[DEFENSE COUNSEL]:  That brings me to—first of all, then I assume that you're denying then also my request for involuntary because you find that there is no objectively reasonable—

"THE COURT:  Correct. There's no legal defense.

"[DEFENSE COUNSEL]:  —a jury could not—there's no objectively reasonable reason to believe a jury couldn't find he was acting in self-defense?

23

"THE COURT: No, sir, I do not believe so. Twelve reasonable minds on the evidence presented in front of this Court could not come to that conclusion."

*Self-Defense*

First, there is no dispute that the self-defense instruction issue was preserved for appellate review; defense counsel requested the instruction at trial. Second, a self-defense instruction would have been legally appropriate. Cf. *State v. Knox*, 301 Kan. 671, 677-78, 347 P.3d 656 (2015) (citing to self-defense statute, K.S.A. 21-3211[b] in finding self-defense instruction legally appropriate). The district court's statements indicate that it relied on the third step, determining that the self-defense instruction was not factually appropriate.

Specifically, the district court viewed the question from the perspective of the defendant's credibility, stating that the issue was whether "twelve reasonable people would listen to what he had just said and believe it." The court was apparently referring to the jury believing Haygood's testimony as to how the shooting took place, to-wit: While arguing with him, Mills took a knife from the kitchen sink and threatened him by saying, "I'm gonna show you";  as he headed toward the garage by way of the living room to try and get away from the argument, Mills rushed toward him with "the knife or what looked like a knife" in her hand; he then braced himself, turned his head, pulled his handgun from his pocket, and shot one time.

The elements to establish the right to use deadly force in self-defense are codified at K.S.A. 2017 Supp. 21-5222:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

24

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

Under this statute, "deadly force can only be justified to the extent a person 'reasonably believes deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.'" 301 Kan. at 678 (quoting the self-defense statute, then codified at K.S.A. 21-3211). This court has recognized that the self-defense statute sets out a two-part test:

"The first is subjective and requires a showing that [the defendant] sincerely and honestly believed it was necessary to kill to defend herself or others. The second prong is an objective standard and requires a showing that a reasonable person in [the defendant's] circumstances would have perceived the use of deadly force in self-defense as necessary. [Citation omitted.]" *State v. McCullough*, 293 Kan. 970, 975, 270 P.3d 1142 (2012).

The State argues that self-defense was not supported by either the subjective or objective prong, because the only evidence of victim aggression is the defendant's own testimony which is contradicted by the testimony of other eyewitnesses and by physical evidence. But that argument does not challenge whether the described circumstances—a victim charging the defendant with a knife after making a threatening statement—would satisfy both the subjective and objective prongs of self-defense. Rather, it simply attempts to rebut the existence of the described circumstances, i.e., the State contends that the weight of the evidence proves that Mills did not charge Haygood with a knife.

The State points us to several "factually similar" cases in which Kansas appellate courts have upheld the refusal to give a self-defense instruction, to-wit: *Knox*, 301 Kan. at 672; *State v. Gayden*, 259 Kan. 69, 84, 910 P.2d 826 (1996); *State v. Childers*, 222 Kan. 32, 49, 563 P.2d 999 (1977); *State v. Bellinger*, 47 Kan. App. 2d 776, 782-83, 278 P.3d 975 (2012); *State v. Alvarez*, No. 109,675, 2014 WL 5611618, at *5-7 (Kan. App. 2014) (unpublished opinion). Those cases consider the quantum of evidence that is necessary to trigger the requirement to instruct the jury on self-defense.

But neither those cases nor the State in its brief addresses the 2010 statutory provisions that impact this analysis. Specifically, K.S.A. 2017 Supp. 21-5108(c), as amended at L. 2010, ch. 136, § 8, provides:

> "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies. Once the defendant satisfies the burden of producing such evidence, the state has the burden of disproving the defense beyond a reasonable doubt."

In *State v. Staten*, 304 Kan. 957, 965, 377 P.3d 427 (2016), we identified the defense theory of self-defense as an affirmative defense and recognized that K.S.A. 2017 Supp. 21-5108(c) "codified the caselaw requirement that, once a defendant properly asserts a self-defense affirmative defense, the State must disprove that defense beyond a reasonable doubt. See Kansas Criminal Code Recodification Commission's Final Report, Appendix A, Section 21-31-301, Comment (2010)."

The statute plainly states that Haygood was entitled to an instruction on self-defense affirmative defense if it was supported by competent evidence. Then, in the second sentence, the statute defines competent evidence as that which could allow a rational fact-finder to reasonably conclude that the defense applies. Here, Haygood's own

testimony was competent evidence that recited circumstances—the victim charging the defendant with a knife—that could allow a reasonable juror to conclude that Haygood was entitled to defend with deadly force.

Granted, the State presented other competent evidence which the jury might weigh more heavily than Haygood's testimony. But the testimony of Stallings that she did not see anything is tempered by the testimony that her eyes were closed and G.T.'s testimony that he did not hear Mills' threat in the kitchen is tempered by the fact that he was in the living room at the time. Nevertheless, that simply highlights why the existence of competent evidence makes the decision on the affirmative defense of self-defense a function for the jury. See *State v. Williams*, No. 107,366, 2014 WL 274455, at *10 (Kan. App. 2014) (unpublished opinion) ("Whether the jurors would have been persuaded that Williams acted in self-defense is not the issue before us today; instead, we are charged with deciding whether the evidence presented at trial warranted instructing the jurors on Williams' claim of self-defense based on the governing statutes."). Therefore, it was error for the district court to deny Haygood's request for an instruction on self-defense.

Accordingly, that moves us to the fourth step in the analysis, whether the error was harmless. This is where the State's arguments and the district court's observations about the factual incongruities come into play. The jury saw pictures of where Mills' body lay after the fatal shooting and heard the coroner testify that she did not move after being shot. That would make a reasonable juror view as implausible Haygood's story that Mills charged him with a knife and then returned the knife to the kitchen sink after being shot. Moreover, the State had two eyewitnesses that described the events as unfolding in a manner that comported with the physical layout of the house and the position of Mills' body. In short, the State has convinced us, beyond a reasonable doubt, that a self-defense instruction would not have changed the verdict from guilty of premeditated first-degree murder.

*Involuntary Manslaughter Lesser Included Offense Instruction*

Haygood also contends that he was entitled to an instruction on involuntary manslaughter, pursuant to K.S.A. 2017 Supp. 21-5405(a)(4) ("Involuntary manslaughter is the killing of a human being committed . . . [4] during the commission of a lawful act in an unlawful manner."). The State concedes this instruction issue was preserved for appellate review, and that this court has held that involuntary manslaughter is a lesser included offense of premeditated first-degree murder. *State v. Solis*, 305 Kan. 55, 67, 378 P.3d 532 (2016); *State v. Gregory*, 218 Kan. 180, 183, 542 P.2d 1051 (1975). We have explained:

> "Perfect self-defense is a concept based on justification or excuse and operates as a complete defense. It applies broadly to all crimes involving the use of force against another. See K.S.A. 21-3211 (Furse) *et seq.* Imperfect self-defense, in contrast, is based not on justification, but on mitigation and, thus, operates only to reduce criminal culpability to a lesser crime. 40 Am. Jur. 2d, Homicide § 139. Imperfect self-defense is 'not a true defense; it does not absolve a defendant of criminal liability. It is, rather, a lesser degree of the crime of homicide.' *State v. Carter,* 284 Kan. 312, 326, 160 P.3d 457 (2007). Imperfect self-defense exists only as a lesser degree of homicide in voluntary manslaughter under K.S.A. 21-3403(b) (intentional killing of a human being committed upon an unreasonable but honest belief that circumstances existed that justified deadly force) and in involuntary manslaughter under K.S.A. 2006 Supp. 21-3404(c) (unintentional killing during the commission of a lawful act in an unlawful manner). *State v. Ordway*, 261 Kan. 776, 787, 934 P.2d 94 (1997) (noting that Kansas recognizes imperfect self-defense for unintentional killings under lawful act/unlawful manner involuntary manslaughter)." *State v. Kirkpatrick*, 286 Kan. 329, 339, 184 P.3d 247 (2008), *overruled on other grounds by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018).

Again, the analysis would come down to the factual appropriateness of the instruction. In that context, we have declared that "'lesser included offense instructions

must be given when there is some evidence, [viewed in a light most favorable to the defendant,] emanating from whatever source and proffered by whichever party, that would reasonably justify a conviction of some lesser included crime.' [Citations omitted.]" *State v. Seba*, 305 Kan. 185, 204, 380 P.3d 209 (2016). But we have tempered that to some degree with respect to a defendant's self-serving statements:

> "This court has stated that '[t]he unsupported testimony of the defendant alone, if tending to establish such lesser degree, is sufficient to require the court to so instruct.' *State v. Clark*, 261 Kan. 460, 464, 931 P.2d 664 (1997). But we have also held that when evidence is overwhelming, a defendant's 'self-serving statement regarding his lack of intent did not in itself invoke a duty on the trial judge to instruct on recklessness.' *State v. Calderon*, 270 Kan. 241, 256, 13 P.3d 871 (2000). In other words, whether an otherwise unsupported and self-serving statement of intent compels a lesser included offense instruction depends on the extent to which the other evidence repudiates the statement." 305 Kan. at 204.

The distinction here is that the self-serving statement is not about Haygood's intent, but rather about what physically transpired between the victim and defendant prior to the shooting. Relative to this instruction, Haygood argues in his brief that the jury could have, in theory, chosen to convict him of involuntary manslaughter based on his version of events by finding that he was authorized to defend himself but not with deadly force. He appears to concede that such a result is unlikely. Nevertheless, he asserts that credibility as to what happened is a jury decision; it is not for the district court to resolve conflicting evidence.

But even if we assume, without deciding, that the instruction should have been given, the unlikelihood of a favorable result—which Haygood acknowledges—is a compelling factor in the next step of the analysis, harmlessness. In other words, even if Haygood wins the battle on the factual appropriateness step, he loses the war on the harmless analysis. As with the self-defense instruction, we hold that an involuntary

29

manslaughter lesser included offense instruction would not have affected the outcome on the facts before us.

Before closing, we briefly address Haygood's argument that the failure to give a lesser included offense instruction cannot be harmless error because the Kansas Constitution, in Sections 5 and 10 of the Bill of Rights, provides for the right to a jury trial. He argues that if a judge decides that the jury cannot consider whether the defendant is guilty of a lesser included offense, the trial court has denied the defendant his or her constitutional right to a jury trial. The short answer is that the determination of whether to instruct on a lesser included offense is a matter of law, "squarely in the court's domain, rather than the jury's." *Love*, 305 Kan. at 736. The Kansas Constitution does not give people the right to have legal questions decided by a jury; that is the function of the court.

Affirmed.

* * *

ROSEN, J., concurring:  I concur with the result in this case, but I depart from the majority's reasoning with regard to the self-defense instruction.

The majority's decision indicates that a defendant's solitary declaration that he or she committed a crime in self-defense will always satisfy the competent evidence standard described in K.S.A. 2017 Supp. 21-5108(c). I disagree. The statute does not declare that competent evidence is *any* evidence, but that it is evidence that "could allow a *rational* fact finder to *reasonably* conclude that the defense applies." (Emphasis added.) K.S.A. 2017 Supp. 21-5108(c). If a defendant testifies that he shot a victim because she was holding a knife, and a video clearly shows that the defendant did not have a knife, no rational fact-finder could reasonably conclude that the victim had a knife. But the

30

majority implies that even in that situation, the court must instruct the jury on self-defense. I do not think this comports with the statute.

K.S.A. 2017 Supp. 21-5108, by its "rational" and "reasonably" language, directs the court to make some assessment of the strength of the evidence on which defendant's self-defense assertion stands. And because the strength of something is a relative concept, the court must consider all of the evidence at its disposal. See *State v. Anderson*, 287 Kan. 325, 337-38, 197 P.3d 409 (2008) (considering all of the evidence to determine whether it supported a compulsion instruction). In *Anderson* we held that a defendant is entitled to instructions on the law applicable to his or her theory of defense—but "there must be evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory." 287 Kan. at 334.

Contrary to the majority's suggestion, the 2010 statutory provision—K.S.A. 21-5108(c)—does not meaningfully impact this analysis. A number of decisions since 2010 confirm this. See *State v. Dupree,* 304 Kan. 377, 397-98, 373 P.3d 811 (2016) (citing *Anderson*'s standard and affirming district court's rejection of compulsion instruction: "[A] district court must evaluate whether a rational juror could conclude that the defendant *reasonably* believed he or she was in danger of death or great bodily harm . . . and whether coercion induced a *well-grounded* fear."); *State v. Knox,* 301 Kan. 671, 677-79, 347 P.3d 656 (2015) (using language similar to *Anderson* language); *State v. Story,* 300 Kan. 702, 710, 334 P.3d 297 (2014) (using language similar to *Anderson* language); *State v. Hilt,* 299 Kan. 176, 184, 322 P.3d 367 (2014) (using language similar to *Anderson* language); *State v. Friday,* 297 Kan. 1023, 1036-37, 306 P.3d 265 (2013) (using language similar to *Anderson* language); *State v. McCullough*, 293 Kan. 970, 974-76, 270 P.3d 1142 (2012) (citing *Anderson* as standard: "In addition, McCullough was not entitled to the self-defense instruction because a reasonable person in her position would not have believed deadly force was necessary to defend herself or others.").

31

Indeed, even before clarifying the test in 2008 with *Anderson,* this court essentially allowed the district court to serve as the jury's gatekeeper by assessing the viability of defenses in light of the evidence. See *State v. Oliver,* 280 Kan. 681, 707, 124 P.3d 493 (2005) (affirming district court's rejection of instruction of compulsion because "[a]lthough there was some minimal evidence that Oliver was under the influence of Bell, there was no evidence supporting the degree of compulsion necessary to merit an instruction on that defense"); see also *State v. Hernandez,* 253 Kan. 705, 711-13, 861 P.2d 814 (1993) (affirming district court's refusal to give defense-of-another instruction because "rational factfinder could not find that Hernandez acted in defense of his sister, Myra, at the time he shot Randy").

In this case, Haygood testified that the victim charged him with a knife and said "I'm gonna show you." In isolation, this might be enough to warrant a self-defense instruction. But, G.T. testified that the victim did not have a knife and did not threaten Haygood, Stallings testified that she did not see a knife or hear a threat, and there was no evidence of a knife near the victim's body. In light of this, I cannot see how a *rational* fact-finder could *reasonably* conclude that Haygood acted in self-defense. Therefore, I would hold that it was not error to deny the self-defense instruction.

NUSS, C.J., and STEGALL, J., join in the foregoing concurring opinion.