NOT DESIGNATED FOR PUBLICATION

No. 121,640

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM D. ANDERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed October 30, 2020.
Convictions affirmed, sentence vacated, and case remanded with directions.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek
Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.


PER CURIAM: William Anderson appeals his convictions for aggravated
kidnapping, two counts of aggravated battery, aggravated robbery, burglary, two counts
of theft, possession of tetrahydrocannabinol, and possession of drug paraphernalia in
Lyon County District Court. He contends that improper closing arguments by the State
constituted prosecutorial error that deprived him of a fair trial. He also argues that the
district court incorrectly calculated his criminal history score when it sentenced him.
Anderson's claim that he was deprived a fair trial based on prosecutorial error does not
warrant relief. However, Anderson is correct that the district court incorrectly calculated
his criminal history score because the presentence investigation (PSI) report did not

1

indicate whether his person felony conviction for criminal threat was for intentional or reckless criminal threat. Our Supreme Court has declared the reckless disregard portion of the statute unconstitutional. We affirm his convictions, vacate the sentence, and remand for resentencing so that the district court can properly calculate Anderson's criminal history score.

BACKGROUND

The facts in this case are extensive. We, therefore, summarize, rather than detail, the pertinent facts that are known to the parties from the testimony at trial. We will make reference in this opinion to additional facts as necessary.

In September 2018, Anderson confronted the victim, Terrin Felmlee, accusing him of sexually assaulting Anderson's girlfriend. With the intent of talking through the situation, Felmlee went to Anderson's location. Anderson restrained Felmlee through threats and physical assault. Over the next approximately 36 hours, Anderson subjected Felmlee to numerous and varied behaviors intended to harm, intimidate, embarrass, and humiliate the victim. Felmlee was struck in the head and his property was taken from him in various ways. All this was done in front of others who eventually testified at trial.

At the end of trial, the jury found Anderson guilty of aggravated kidnapping, two counts of aggravated battery, robbery, burglary, two counts of theft, possession of tetrahydrocannabinol, and possession of drug paraphernalia. The original sentencing hearing occurred on July 18, 2019, where the district court set Anderson's criminal history score at C. Anderson's criminal history score was based on a PSI report that included a conviction for criminal threat, but the PSI report did not reveal whether that conviction was for intentional or reckless criminal threat. The district court ultimately sentenced Anderson to 388 months' imprisonment.

Anderson timely appeals.

ANALYSIS

I. *Prosecutorial error did not deprive Anderson of a fair trial.*

Anderson argues that the State committed prosecutorial error during its closing argument by stating to the jury that the victim was "shot with his own gun," which misstated the evidence. Anderson concedes that he never objected to the State's comment. Nonetheless, Kansas appellate courts have not required a contemporaneous objection to preserve this issue for appellate review when prosecutorial error is alleged during closing arguments. *State v. McBride*, 307 Kan. 60, 65, 405 P.3d 1196 (2017); *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015). However, while a lack of objection does not impede a court's ability to review the issue, "'the presence or absence of an objection may figure into [a court's] analysis of the alleged misconduct.'" *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017) (quoting *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]).

When an appellant alleges prosecutorial error, appellate courts use a two-step process to evaluate the alleged error, which is described as error and prejudice. The court first examines the alleged error and decides whether the prosecutor exceeded the wide latitude afforded prosecutors to conduct the State's case. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). "In determining whether a particular statement falls outside of the wide latitude given to prosecutors, the court considers the context in which the statement was made, rather than analyzing the statement in isolation." *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). If the court finds that the prosecutor committed error, it must next decide whether the error prejudiced a defendant's right to a fair trial. The court applies a constitutional harmlessness inquiry when evaluating prejudice, i.e., whether the State can prove beyond a reasonable doubt that the error did not contribute to the jury's verdict. *Sherman*, 305 Kan. at 109.

3

*The victim was shot with his own gun*

At the beginning of the State's closing argument, the prosecutor stated:

>"Shortly after 5:30 p.m., on September 14, 2018, soon began nearly 30 hours of physical injury and terror for Terrin Felmlee. You heard evidence that he was held against his will, forced to give up his cell phone, his car, his money, and literally treated like a dog. Forced into the dog cage, wearing a dog collar and leash that you can see here in the courtroom today.
>"He was beaten, *shot with his own gun*, transported in the trunk of his own car with a pillowcase on his head, and disfigured permanently with a tattoo. He was forced to endure intense fear knowing at any time that one wrong move and he might die." (Emphasis added.)

In *State v. Pruitt*, 310 Kan. 952, 964, 453 P.3d 313 (2019), our Supreme Court stated:

>"During closing argument, 'a prosecutor may comment on admitted evidence as long as the remarks accurately reflect the evidence, accurately state the law, and are not intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law.' [Citation omitted.]"

The State argues that the prosecutor's comment about Felmlee being shot with his own gun was not error because it was a reasonable inference that could be drawn from the evidence. The State is correct that prosecutors can craft arguments that include reasonable inferences drawn from admitted evidence. See *State v. Haygood*, 308 Kan. 1387, 1398, 430 P.3d 11 (2018). The State asserts that the comment was a reasonable inference based on the evidence that someone discharged an airsoft gun into Felmlee's leg.

4

To support this, the State points to Felmlee's testimony that he owned airsoft guns and the fact that police officers recovered a magazine to an airsoft gun when they searched Steen's residence. The State also points to Villa's testimony that Anderson told him, "[w]in, lose, or draw, I shoot," when they almost fought at Clark's residence and the sharp pain that Felmlee felt when something hit his leg.

Other testimony challenges the State's claim. Though Felmlee admitted he owned airsoft guns and that it was possible an airsoft gun could have been in his vehicle, he could not recall whether he had one with him when he was living in Emporia in September 2018. Furthermore, Felmlee testified that before, during, and after his left leg was injured, he could not see anything because the pillowcase was over his head. He was only able to say that it felt "like a pipe," and the "best way to describe it would be probably like a paint ball gun or an airsoft gun." Additionally, police never recovered an airsoft gun and the recovered airsoft magazine from Steen's residence was not loaded with any plastic ammunition.

The lack of specification is important. While there was some discussion about an airsoft gun, Felmlee's .22 caliber rifle was discussed extensively throughout the case. It was the .22 caliber rifle that Murillo discharged, causing glass shards to hit Felmlee's leg. Based on the State's argument, the evidence could be subject to more than one inference. Because of a lack of specification, the statement was not a completely accurate description of the evidence in the case. See *Pruitt*, 310 Kan. at 964.

Regardless of the lack of specificity, the court must consider the context surrounding the statement rather than analyzing it in isolation. *Ross*, 310 Kan. at 221. After making the statement, the State went through the crimes Anderson was charged with and the evidence that supported each charge. The State discussed how the evidence that Anderson hit Felmlee on the head with the handles of the knives supported Count 2, the first count of aggravated battery. The State then discussed how Schlesener tattooing

5

Felmlee at Anderson's direction supported Count 3, the second count of aggravated battery under an aiding and abetting theory. Aside from the brief remark at the beginning of the opening statement, the State at no point mentioned Felmlee being shot with his own gun as a basis to convict Anderson of either aggravated battery charge. Furthermore, the State went on to discuss each and every charge and the evidence that supported those charges without any further reference to the complained of statement.

In the rebuttal portion of her closing argument, the prosecutor also stated that her remarks were intended to help the jury "but they are not evidence. So, if any statements are made that are not supported by the evidence that you see in front of you or that you've heard over the course of the week, those statements should be disregarded." The prosecutor also reiterated the State's position that the knives were a deadly weapon that supported finding Anderson guilty of aggravated battery.

When viewed in context, the prosecutor's statement at the beginning of her closing argument was inaccurate, but it was also brief and isolated. The full context makes clear that the statement was not meant to inflame the passions or prejudices of the jurors or distract them from their duty to decide the case based on the evidence or the controlling law. See *Pruitt*, 310 Kan. at 964. We find that the prosecutor did not err when she made the statement.

*Prejudice*

In addition to showing that the prosecutor made an improper statement, Anderson must also show whether the error prejudiced Anderson's right to a fair trial. When evaluating prejudice, appellate courts apply a constitutional harmlessness inquiry, i.e., whether the State can prove beyond a reasonable doubt that the error did not contribute to the jury's verdict. Put differently, the State must show that the errors present no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. at 109.

6

When assessing prejudice, "'[t]he focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry.'" *State v. Ballou*, 310 Kan. 591, 598, 448 P.3d 479 (2019) (quoting *Sherman*, 305 Kan. at 111).

Anderson argues that the State cannot meet its burden because he asserted an elements defense at trial, arguing that Felmlee voluntarily chose to be subjected to some of the behaviors directed at him and that he did not force or instruct Felmlee to do the alleged acts. Anderson also argues that the trial largely centered on credibility, and the prosecutor's comments inflamed the jury.

However, when viewed in context, the brief, isolated comment was not designed to influence the jury's deliberations. It was part of a brief comment made before the State went through each charged crime and described the supporting evidence in detail. The State did not make any further reference to the statement or any further implication that Felmlee was shot with his own gun.

There was significant evidence introduced against Anderson at trial. The State introduced several exhibits that showed what police officers recovered when they searched Steen's residence, including Felmlee's financial cards, the dog kennel containing urine, a pillowcase Felmlee described, Felmlee's car key, Felmlee's .22 caliber rifle, the shirt that Felmlee was originally wearing, a prescription bottle with Felmlee's name, and Felmlee's hunting license, among other things. A DNA test of the pillowcase revealed a DNA match with Felmlee.

The police also recovered a kitchen knife, dog collars, marijuana, drug paraphernalia, and an Amazon package addressed to Felmlee. Furthermore, the State

introduced the video from Emporia State Bank that showed people inside Felmlee's vehicle making a transaction from the teller's window. An officer also testified that the police recovered Felmlee's vehicle on September 20 about a block-and-a-half away from Steen's residence. Moreover, on top of Felmlee's testimony, four other witnesses all testified against Anderson. The evidence against Anderson was overwhelming. The State met its burden to prove beyond a reasonable doubt that any error did not affect the jury's verdict in the case. See *Sherman*, 305 Kan. at 109. We affirm Anderson's convictions.

II. *The district court erred in calculating Anderson's criminal history score.*

Anderson contends that the district court incorrectly calculated his criminal history score. Anderson concedes that he did not object to the inclusion of his prior criminal threat conviction in his criminal history score during sentencing. But he points to *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015), as authority to support his contention that he can raise such a challenge for the first time on appeal.

In *Dickey*, our Supreme Court overruled a line of cases that stood "for the proposition that a legal challenge under K.S.A. 22-3504(1) is waived if the defendant stipulated or failed to object at sentencing to the classification of prior convictions or the resulting criminal history score." 301 Kan. at 1032. Our Supreme Court then held that legal challenges to the classification of a prior adjudication can be raised for the first time on appeal because the language of K.S.A. 22-3504(1) "specifically authorizes a court to 'correct an illegal sentence at any time.'" 301 Kan. at 1034. Anderson is correct that he can raise such a challenge for the first time on appeal, despite failing to object during sentencing.

Appellate courts exercise unlimited review of a district court's classification of prior offenses for criminal history purposes because it involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq.,

8

which is a question of law. *State v. Ewing*, 310 Kan. 348, 351, 446 P.3d 463 (2019). The State bears the burden to establish a criminal defendant's criminal history score by a preponderance of the evidence. K.S.A. 2019 Supp. 21-6814(a); *State v. Obregon*, 309 Kan. 1267, Syl. ¶ 4, 444 P.3d 331 (2019).

Here, the district court scored Anderson's criminal history at C. Under K.S.A. 2019 Supp. 21-6809, a defendant's criminal history must include "one adult conviction or juvenile adjudication for a person felony, and one or more adult conviction or juvenile adjudication for a nonperson felony" for the defendant's criminal history to be C. To arrive at Anderson's score, the district court considered the PSI report, which listed a 2017 conviction for criminal threat, a person felony. See K.S.A. 2019 Supp. 21-5415(a)(1). But the PSI report did not reveal whether his conviction was for reckless or intentional criminal threat.

Relying on *Virginia v. Black*, 538 U.S. 343, 359-60, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), our Supreme Court held in *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), that a conviction for criminal threat based solely on recklessness was unconstitutional. The recklessness provision was "unconstitutionally overbroad because it [could] apply to statements made without the intent to cause fear of violence," and the language of the statute "provide[d] no basis for distinguishing circumstances where the speech is constitutionally protected from those where the speech does not warrant protection under the First Amendment." 310 Kan. at 822-23.

Under the revised KSGA, "[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." K.S.A. 2019 Supp. 21-6810(d)(10). "Generally, when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the

9

date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013); see *State v. Thomas*, 307 Kan. 733, 741, 415 P.3d 430 (2018).

The State's only argument against the *Boettger* decision applying to Anderson's case is that the decision is not yet final because our Supreme Court stayed the issuance of its mandate to allow the State to petition for writ of certiorari pursuant to K.S.A. 2019 Supp. 22-3605(b)(1). However, on June 22, 2020, the United States Supreme Court denied the State's petition for writ of certiorari. Following the denial of the State's petition, our Supreme Court issued its mandate on June 23, 2020. The *Boettger* decision applies to Anderson's case. See *Thomas*, 307 Kan. at 741; *Mitchell*, 297 Kan. at 124-125.

The State did not satisfy its burden to establish Anderson's criminal history by a preponderance of the evidence. The district court erred because the PSI report did not reveal whether Anderson's criminal threat conviction was for reckless or intentional criminal threat. For these reasons, we vacate the sentence entered and remand the issue so the district court can determine Anderson's appropriate criminal history score. See *Obregon*, 309 Kan. at 1275-76.

Convictions affirmed, sentence vacated, and case remanded with directions.